Michael A. Callinan (MC7052)
Vanessa Hlinka (VH0808)
Craig J. Bruno (CB3064)
Steven Daniel Levy (SL8519)
**CALLINAN & SMITH LLP**
3361 Park Avenue, Suite 104
Wantagh, New York 11793

*Counsel for Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, THE FIRST LIBERTY INSURANCE CORPORATION, LM INSURANCE CORPORATION, LIBERTY MUTUAL MID-ATLANTIC INSURANCE COMPANY, LIBERTY COUNTY MUTUAL INSURANCE COMPANY, LM PROPERTY and CASUALTY INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, WAUSAU UNDERWRITERS INSURANCE COMPANY, SAFECO COMPANY OF INDIANA, AMERICAN STATES INSURANCE COMPANY and MONTGOMERY MUTUAL INSURANCE COMPANY, | Docket No.:<br><br>**CIVIL COMPLAINT**<br><br>**Plaintiffs Demand a Trial by Jury** |

Plaintiffs,

-against-

MC PHYSICAL THERAPY, P.C., MICHELLE NESAS CUADRA, P.T., RAINE M. PESIDAS PHYSICAL THERAPY, P.C., RAINE M. PESIDAS, P.T., BETTER HANDS PHYSICAL THERAPY, P.C., KRISTINE MAY BITANGA PARCON, P.T., GO FLEX REHAB THERAPY, P.C., LYNN J. BALLENER, P.T., VLADIMIR GEYKHMAN, 3902 LLC, RAFIK KOPTIEV, RUSI SANJANA, 1001 NY CORP., DELTA BILLING SERVICE CORP., FIRST CHOICE SOFTWARE MANAGEMENT CORP., MAVJUDA TASHEVA, ADVERTISING & WEB INC., ABC MARKETING SOLUTIONS CORP., FIVE STAR ADVERTISING SERVICES CORP., MNDNT CORP.,

1

MATLYUBA KHAKIMOVA, MICHAEL RESNICK F/K/A MICHAEL REZNIKOV, ALINA MARGULIS, ALL LEGAL SUPPORT SERVICES, INC., COMP & NETWORK SUPPORT SERVICES, INC., EXPERT TRANSPORT SERVICES, INC., QUICK BILLING & COLLECTION SERVICES, INC., NATALIYA ANISIMOVA, ALPHA BILLING SOLUTION CORP., HANNAH BURLAK, AVON A.S. CORP, ARTUR SATTAROV, BUSINESS DEVELOPMENT SERVICES, INC., DATA STORAGE & FILING PREPARATION INC., EXPRESS JANITORIAL SERVICES, INC., RAIVIS GRAVELSINS, JJR GLOBAL, LTD., JNBNJ ENTERPRISES CORP., DARYNA BURLAK, JWNY BILLING AND COLLECTIONS CORP., JASHUR RAHMATOV, LIOUDMILA BERSENEVA INC., LIOUDMILA BERSENEVA, MIRONCOM EXPERT, INC., NY BEST COLLECTIONS & LITIGATION INC., OFFICE SUPPLY SERVICES, INC., PROMPT PROCESS INVEST SERVICES, INC., LIUDMYLA LYPNIAKOVA, ONE OF KIND TRANSPORT, INC., LEONID POGORILER, PROF COLLECTION & LITIGATION SERVICES INC., PROFESSIONAL DOCUMENTS PREPARATION, INC., RAMI EL SUWI, ROMGO TECH SERVICE, INC., SHN GLOBAL, INC., STGG ENTERPRISES, CORP., SUPREME TRANS, INC., SOJIDA BKOEVA, WEST EAST ADVERTISING & MARKETING, INC., KONSTANTIN BURASOV,

Defendants.

-------------------------------------------------------------------------X



## CIVIL COMPLAINT

Plaintiffs, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company (hereinafter collectively referred to as "Liberty Mutual" or "Plaintiffs"), by and through their attorneys, Callinan & Smith LLP, as and for their complaint against the Defendants in this action, hereby alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

1.      This action seeks to recover more than One Hundred Fifty Thousand Dollars ($150,000.00) that Defendants, MC Physical Therapy, P.C., Raine M. Pesidas Physical Therapy, P.C., Better Hands Physical Therapy, P.C. and Go Flex Rehab Physical Therapy, P.C. have wrongfully obtained from Liberty Mutual by submitting, or causing to be submitted, fraudulent No-Fault insurance charges for unnecessary healthcare services, including computerized range of motion and muscle testing ("ROM/MT") and computerized activity limitation tests ("ALM Tests") (collectively, the "Fraudulent Services"), that Defendants allegedly rendered on a transient basis at numerous multidisciplinary No-Fault medical clinics to individuals ("Insureds") who were involved in automobile accidents and eligible for insurance coverage under the Plaintiffs' insurance policies.  Since the submission of the billing at issue to Liberty Mutual, the New York State Workers' Compensation Fee Schedule has been amended and under current law, the Fraudulent Services are no longer a reimbursable service.

2.      This action further seeks a declaration that Liberty Mutual is not legally obligated to pay reimbursement of approximately Six Hundred Fifty Thousand Dollars ($650,000.00) in pending charges submitted by or on behalf of Defendants, MC Physical Therapy, P.C., Raine M. Pesidas Physical Therapy, P.C., Better Hands Physical Therapy, P.C. and Go Flex Rehab Physical Therapy P.C., because:

   i)  the Fraudulent Services were not medically necessary and were provided, to the extent that they were provided at all, pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

   ii)  the Defendants misrepresented and exaggerated the level of services that purportedly were provided through billing codes used to charge the Fraudulent Services in order to inflate the charges submitted to the Plaintiffs;

iii)   the Fraudulent Services were provided, to the extent that they were provided at all, pursuant to illegal kickback arrangements between the Defendants and others;

iv)   the Fraudulent Services rendered, to the extent they were rendered at all, were ordered pursuant to a fraudulent billing and treatment protocol created and controlled by unlicensed laypersons;

v)   the Fraudulent Services rendered, to the extent they were rendered at all, were rendered by independent contractors (IRS Form 1099 employees) in direct contravention of New York State law;

vi)   that Defendants, MC and Better Hands, are not entitled to receive No-Fault reimbursements for healthcare services allegedly rendered as the Defendant failed to meet a material condition precedent to coverage as set forth in the applicable policy of insurance as well as the No-Fault Regulation by refusing and failing to appear for a duly scheduled Examination Under Oath ("EUO"); and

vii)   that Defendants, MC and Better Hands, lack standing to seek or receive No-Fault reimbursements for any bill submitted for which an EUO was requested and for which the Defendants failed to appear.

3.   The Defendants fall into the following categories:

i)   Defendants, MC Physical Therapy, P.C. ("MC"), Raine M. Pesidas Physical Therapy, P.C. ("Raines"), Better Hands Physical Therapy, P.C. ("Better Hands") and Go Flex Rehab Physical Therapy, P.C. ("Go Flex") (hereinafter referred to as the "PC Defendants"), are transient healthcare professional corporations that allegedly performed the Fraudulent Services and billed Liberty Mutual for those services; and

ii)   Defendants, Michelle Nesas Cuadra, P.T. ("Cuadra"), Raine M. Pesidas, P.T. ("Pesidas") Lyn J Ballener, P.T. (Ballener) and Kristine May Bitanga Parcon, P.T. ("Parcon") (hereinafter referred to as the "Professional Defendants"), are licensed physical therapists and are the nominal owners respectively of PC Defendants, MC, Raines, Better Hands and Go Flex, and allegedly are the treating providers who rendered the Fraudulent Services on behalf of the PC Defendants.

iii)   Defendants, 1001 NY Corp., 3902 LLC., ABC Marketing Solutions Corp., Advertising & Web Inc., All Legal Support Services, Inc.,

4

Alpha Billing Solution Corp., Avon A.S. Corp, Business Development Services, Inc., Comp & Network Support Services, Inc., Data Storage & Filing Preparation Inc., Delta Billing Service Corp, Expert Transport Services, Inc., Express Janitorial Services, Inc., First Choice Software Management Corp., Five Star Advertising Services Corp.,  JJR Global, Ltd., JNBJ Entreprises Corp., JWNY Billing and Collections Corp., Lioudmila Berseneva Inc., Mironcom Expert, Inc., MNDNT Corp., NY Best Collections & Litigation Inc, Office Supply Services, Inc., One of Kind Transport, Inc., Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Prompt Process Invest Services, Inc., Quick Billing & Collection Services, Inc., Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., and West East Advertising & Marketing, Inc., (collectively referred to as "support services") are businesses affiliated with the transient healthcare professional corporations who have been financially enriched by their participation in the scheme which seeks compensation for fraudulent services.

iv)     Vladimir Geykhman, Nataliya Anisimova, Raivis Gravelsins, Lioudmila Berseneva, Liudmyla Lypniakova, Mavjuda Tasheva, Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, Hanna Burlak, Artur Sattarov, Daryna Burlak, Jashur Rahmatov, Lioudmila Berseneva, Sojida Bkoeva, Raik Koptiev, Rusi Sanjana, Leonid Pogoriler, Rami El Suwi and Konstantin Burasov (collectively referred to as "layperson owners") are believed to be the actual beneficial owners of PC Defendants and were financially enriched by their involvement in the fraudulent services scheme and received remuneration for their support in the scheme.

4.     The PC Defendants are not and have never been eligible to be compensated for the Fraudulent Services because, at all relevant times, they knew: (i) the Fraudulent Services were medically unnecessary, and were ordered and performed pursuant to a fraudulent pre-determined treatment protocol that served to maximize the charges that the PC Defendants could submit to Liberty Mutual, rather than to legitimately diagnose, treat or otherwise benefit the Insureds; (ii) the billing codes used for the Fraudulent Services misrepresented and/or exaggerated the level and type of services in order to inflate and/or unbundle the charges submitted to Liberty Mutual; (iii) the Fraudulent Services were rendered by independent contractors; (iv) the Fraudulent Services

were provided pursuant to illegal kickback arrangements that enriched the Defendants and others; and (v) that Defendants, MC and Better Hands, failed to meet a material condition precedent to coverage as set forth in the applicable policy of insurance as well as the No-Fault Regulation by refusing and failing to appear for a duly scheduled Examination Under Oath ("EUO"). The bank records of each of the PC Defendants – and those of non-party entities – clearly demonstrates that each of the PC Defendants was operated in a manner by Geykhman and the other layperson owners so as to funnel money to themselves and their corporate alter-egos, i.e., the support services.

5. The charts annexed hereto as **Exhibits "A"** through **"D"** respectively set forth the fraudulent claims that have been identified to date that the PC Defendants, MC, Raines, Better Hands and Go Flex, submitted, or caused to be submitted, to Liberty Mutual. Charts detailing by claim number, the receipt of Defendants' bills, the issuance of verification requests, the scheduling of the EUO and the timely denial of the claim is attached hereto respectively as **Exhibits "E" (MC), "F" (Raines), "G" (Better Hands)** and **"H" (Go Flex)** for each PC Defendants' failure to appear for an Examination Under Oath.

6. Defendants' conduct, including the submission of fraudulent claims using the Taxpayer Identification Numbers ("TINs") of MC Physical Therapy, P.C., Raine M. Pesidas Physical Therapy, P.C., Better Hands Physical Therapy, P.C. and Go Flex Rehab Physical Therapy P.C., which were submitted through the United States Postal Service seeking reimbursement pursuant to the New York No-Fault Regulation, represents violation of the federal Racketeer Influenced and Corrupt Organizations (RICO) statute.

7. The Defendants' fraudulent scheme began as early as June 2019 and has continued uninterrupted through present day.

8.      As a result of the Defendants' fraudulent scheme, Liberty Mutual has incurred actual and potential damages of more than One Hundred Fifty Thousand Dollars ($150,000.00).

## THE PARTIES

### I.      Plaintiff

9.      Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company and any and all of their subsidiaries, affiliates and/or parent companies (hereinafter collectively referred to as "Liberty Mutual") are insurance companies duly authorized to issue automobile polices in the State of New York.  Liberty Mutual maintains a place of business in Uniondale, New York.

### II.     Defendants

10.     Upon information and belief, MC was and is a domestic professional corporation with principal place of business in New York.   MC was incorporated in New York on or about June 20, 2019, and purports to be owned and controlled by Defendant Cuadra.  MC was used by the unlicensed laypersons as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

11.     Defendant Cuadra resides in and is a citizen of New York.  Cuadra was licensed to practice physical therapy in New York on March 10, 2008, and serves as the nominal owner of MC.  Cuadra has permitted her name and license to be used as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

12.    Upon information and belief, Raine was and is a domestic professional corporation with principal place of business in New York.   Raine was incorporated in New York on or about September 24, 2019, and purports to be owned and controlled by Defendant Pesidas.   Raine was used by the unlicensed laypersons as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

13.    Defendant Pesidas resides in and is a citizen of New York.  Pesidas was licensed to practice physical therapy in New York on January 11, 2010, and serves as the nominal owner of Raine.  Pesidas has permitted his name and license to be used as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

14.    Upon information and belief, Better Hands was and is a domestic professional corporation with principal place of business in New York.   Better Hands was incorporated in New York on or about January 17, 2017, and purports to be owned and controlled by Defendant Parcon. Better Hands was used by the unlicensed laypersons as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

15.    Defendant Parcon resides in and is a citizen of New York.  Parcon was licensed to practice physical therapy in New York on December 13, 2005, and serves as the nominal owner of Better Hands.  Parcon has permitted her name and license to be used as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

16.    Upon information and belief, Go Flex was and is a domestic professional corporation with a principal place of business in New York. Go Flex was incorporated in New York on or about August 12, 2019, and purports to be owned and controlled by Defendant, Ballener. Go Flex was used by the unlicensed laypersons as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

17.     Defendant Ballener resides in and is a citizen of New York. Ballener was licensed to practice physical therapy in New York on March 10, 2010, and serves as the nominal owner of Go Flex. Ballener has permitted her name and license to be used as a vehicle to submit fraudulent billing to Liberty Mutual and other insurers.

18.     Upon information and belief, Defendant, Vladimir Geykhman resides in and is a citizen of New York. Vladimir Geykhman, is believed to have directed the PC defendants as to the creation and execution of the scheme, including having the PC defendant's owners pre-execute checks from the associated financial accounts which could be later drawn upon without the need for further signature. Vladimir Geykhman was previously indicted in the United States District Court, Eastern District of New York in connection with a health care fraud and money laundering scheme where medical provider bank accounts would be created, and checks would be pre-signed to allow for the transfer of funds to various co-conspirators and Vladimir Geykhman.   On November 8, 2021, Vladimir Geykhman plead guilty to a charge brought against him in the action entitled United States of America v. Geykhman, 1:20-cr-00371-AMD (EDNY 2020)

19.     Upon information and belief, Defendant 3902 LLC (hereinafter referred to as "3902 LLC").  was and is a domestic limited liability corporation with a principal place of business in New York. 3902 LLC was incorporated in New York on or about May 10, 2011, and purports to be managed and owned by Rafik Koptiev and Rusi Sanjana.  3902 LLC's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

20.     Upon information and belief, Defendant, Rafik Koptiev, (hereinafter referred to as "Koptiev") resides in and is a citizen of New York and serves as an owner and/or manager of 3902 LLC. In that capacity, Rafik Koptiev has permitted the premises under 3902 LLC's ownership to

be used for the purposes of submitting fraudulent billing to Liberty Mutual and other insurers.

21.     Upon information and belief, Defendant, Rusi Sanjana, (hereinafter referred to as "Sanjana") resides in and is a citizen of New York and serves at an owner and/or manager of 3902 LLC. In that capacity, Rusi Sanjana has permitted the premises under 3902 LLC's ownership to be used for the purposes of submitting fraudulent billing to Liberty Mutual and other insurers.

22.     Upon information and belief, 1001 NY Corp. (hereinafter referred to as "1001 NY Corp.") was and is a domestic corporation with a principal place of business in New York. 1001 NY Corp was incorporated in New York on or about February 20, 2018, and purports to be owned and controlled by Mavjuda Tasheva.  1001 NY Corp.'s involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

23.     Upon information and belief, Delta Billing Service Corp. (hereinafter referred to as "Delta") was and is a domestic business corporation with a principal place of business in New York. Delta Billing Service Corp was incorporated in New York on or about May 13, 2019 and purports to be owned and controlled by Mavjuda Tasheva. Delta Billing Service was used as a vehicle to submit bills for fraudulent services to Liberty Mutual and other insurers.  Delta's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

24.     Upon information and belief, First Choice Software Management Corp. (hereinafter "First Choice") was and is a domestic business corporation with a principal place of business in New York. First Choice Software Management Corp. was incorporated in New York on or about January 24, 2019, and purports to be owned and controlled by Mavjuda Tasheva.  First Choice's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

25.     Upon information and belief, Mavjuda Tasheva (hereinafter "Tasheva") resides in and is a citizen of New York and serves as an owner of the 1001 NY, Delta Billing, and First Choice. Through those entities, Mavjuda Tasheva was financially enriched by his involvement in the scheme to submit fraudulent services to Liberty Mutual and other insurers.

26.     Upon information and belief, Advertising & Web Inc. (hereinafter referred to as "A&W") is a domestic business corporation with a principal place of business in New York. Advertising & Web Inc. was incorporated in New York on or around July 5, 2018. Advertising & Web Inc. was financially enriched by its participation in the scheme to submit fraudulent services to Liberty Mutual and other insurers.  The owner of A&W has been intentionally disguised. A&W's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

27.     Upon information and belief ABC Marketing Solutions Corp. (hereinafter "ABC") is a domestic business corporation with a principal place of business in New York. ABC was incorporated on or about March 13, 2019, and purports to be owned and controlled by Matlyuba Khakimova.  Upon information and belief, ABC operates out of 235 Coleridge Street, Brooklyn, New York.  ABC's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

28.     Upon information and belief Five Star Advertising Services Corp. (hereinafter "Five Star") is a domestic business corporation with a principal place of business in New York. Five Star was incorporated on or about January 24, 2019, and purports to be owned and controlled by Matlyuba Khakimova. Upon information and belief, Five Star operates out of 235 Coleridge Street, Brooklyn, New York.  Five Star's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

29.     Upon information and belief MNDNT Corp. (hereinafter "MNDNT") is a domestic business corporation with a principal place of business in New York. MNDNT was incorporated on or about February 20, 2018, and purports to be owned and controlled by Matlyuba Khakimova. Upon information and belief, MNDNT operates out of 235 Coleridge Street, Brooklyn, New York. MNDNT's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

30.     Upon information and belief, Matlyuba Kahkimova, (hereinafter referred to as Kahkimova") resides in an is a citizen of New York as serves as an owner of ABC, Five Star and MNDNT. Through those entities Matlyuba Kahkimova was financially enriched by the involvement in the scheme to submit fraudulent services to Liberty Mutual and other insurers.

31.     Upon information belief, Michael Resnick f/k/a Michael Reznikov (hereinafter "Resnick") resides in and is a citizen of the State of New York and is one of the actual owners of ABC, Five Star and MNDNT.

32.     Upon information belief, Alina Margulis (hereinafter "Margulis") resides in and is a citizen of the State of New York and is one of the actual owners of ABC, Five Star and MNDNT.

33.     Upon information and belief, Resnick and Margulis are husband and wife and own 235 Coleridge Street, Brooklyn, New York.  Resnick and Margulis previously plead guilty to participating in a scheme to distribute Oxycodone without a medical need.

34.     Upon information and belief, All Legal Support Services Inc. (hereinafter "ALSS") was and is a domestic business corporation with a principal place of business in New York. ALSS was incorporated on or about May 22, 2019, and purports to be owned and controlled by Nataliya Anisimova.  ALSS's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

35.     Upon information and belief, Comp & Network Support Services Inc. (hereinafter "CNSS") was and is a domestic business corporation with a principal place of business in New York. CNSS was incorporated on or about May 22, 2019, and purports to be owned and controlled by Nataliya Anisimova.  CNSS's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

36.     Upon information and belief, Expert Transport Services Inc. (hereinafter "Expert") was and is a domestic business corporation with a principal place of business in New York. Expert was incorporated on or about May 22, 2019, and purports to be owned and controlled by Nataliya Anisimova.  Expert's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

37.     Upon information and belief, Quick Billing & Collection Services Inc. (hereinafter "QBCS") was and is a domestic business corporation with a principal place of business in New York. QBCS was incorporated on or about May 22, 2019, and purports to be owned and controlled by Nataliya Anisimova. QBCS was used as a vehicle to submit bills for fraudulent services to Liberty Mutual and other insurers.  QBCS' involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

38.     Upon information and belief, Nataliya Anisimova resides in and is a resident of New York and serves as an owner of ALSS, CNSS, Expert, and QBCS. Through those entities, Nataliya Anisimova was financially enriched by the involvement in the scheme to submit fraudulent services to Liberty Mutual and other insurers.

39.     Upon information and belief, Alpha Billings Solution Corp. (hereinafter "Alpha") was and is a domestic business corporation with a principal place of business in New York.  Alpha was incorporated on or around January 24, 2019, and purports to be owned and controlled by

Hannah Burlak. Alpha was used to submit billing for fraudulent services to Liberty Mutual and other insurers. Alpha's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

40. Upon information and belief, Hannah Burlak resides in and is a resident of New York and serves as an owner of Alpha. Through that entity, Hannah Burlak was financially enriched by the involvement in the scheme to submit fraudulent services to Liberty Mutual and other insurers.

41. Upon information and belief, Avon A.S. Corp. (hereinafter "Avon") was and is a domestic business corporation with a principal place of business in New York. Avon was incorporated on or around September 12, 2019, and purports to be owned and controlled by Artur Sattarov. Avon's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

42. Upon information and belief, Artur Sattarov (hereinafter referred to as Sattarov") resides in and is a citizen of New York and is the owner of Avon A.S. Corp. Through that entity, Artur Sattarov was finically enriched by his involvement in the scheme to obtain benefits for fraudulent services from Liberty Mutual and other insurers.

43. Upon information and belief, Business Development Services, Inc. (hereinafter "BDS") was and is a domestic business corporation with a principal place of business in New York. BDS was incorporated on or around September 12, 2019. BDS was financially enriched by their involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers. BDS's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

44. Upon information and belief, Data Storage & Filing Preparation Inc. (hereinafter

"DSFP") was and is a domestic business corporation with a principal please of business in New York. DSFP was incorporated on or around January 17, 2018. DSFP was financially enriched by their involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.  DSFP's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

45.    Upon information and belief, Express Janitorial Services Inc. (hereinafter "Express"), was and is a domestic business corporation with a principal place of business in New York. Express was incorporated on or about July 11, 2019. Express is purported owned and controlled by Raivis Gravelsins.  Express was financially enriched by their involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers. Express's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

46.    Upon information and belief, Defendant, Raivis Gravelsins, (hereinafter referred to as "Gravelsins") resides in and is a citizen in New York and is the owner of Express. Through ownership of Express, Raivis Gravelsisn was financially enriched by the involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

47.    Upon information and belief, Defendant, JJR Global Ltd. (hereinafter "JJR") was and is a domestic business corporation with a principal place of business in New York. JJR was incorporated on or around September 19, 2019. JJR was financially enriched by their involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers. JJR's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

48.    Upon information and belief, Defendant, JNBNJ Enterprises Corp. (hereinafter

"JNBNJ") was and is a domestic business corporation with a principal place of business in New York. JNBNJ was incorporated on or around April 12, 2018. JNBNJ purports to be owned and controlled by Daryna Burlak.  JNBNJ's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

49.     Upon information and belief, Defendant, Daryna Burlak resides in and is a citizen of New York and is the owner of JNBNJ. Through JNBNJ, Daryna Burlka was financially enriched by the involvement in the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

50.     Upon information and belief, JWNY Billing and Collections Corp. (hereinafter "JWNY") was and is a domestic business corporation with a principal place of business in New York.  JWNY was incorporated on or around March 3, 2019. JWNY purports to be owned and controlled by Jashur Rahmatov.  JWNY's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

51.     Upon information and belief, Defendant, Jashur Rahmatov (hereinafter "Rahmatov") resides in and is a citizen of New York and is the owner of JWNY. Through JWNY, Jashur Rhamatov was financially enriched by one or more the PC defendants in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

52.     Upon information and belief, Defendant, Lioudmila Berseneva, Inc. (hereinafter referred to as "LB") was and is a domestic business corporation with a principal place of business in New York. LB was incorporated on or about November 12, 2008, and purports to be owned and controlled by Lioudmila Berseneva.  LB's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

53.     Defendant, Lioudmila Berseneva (hereinafter referred to as "Berseneva") resides

in and is a citizen of New York and the owner of Lioudmila Berseneva, Inc. Through LB, Lioudmila Berseneva was financially enriched by one or more the PC defendants in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

54.     Upon information and belief, Defendant, Mironcom Expert Inc. (hereinafter "Mironcom") was and is a domestic business corporation with a principal place of business in New York. Mironcom was incorporated on or around March 5, 2014. Mironcom was financially enriched by one or more the PC defendants in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.  Mironcom's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

55.     Upon information and belief, Defendant, NY Best Collections & Litigation Inc. (hereinafter "NY Best") was an is a domestic business corporation with a principal place of business in New York. NY Best was incorporated on or around September 13, 2017. NY Best was financially enriched by one or more the PC Defendants in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.   NY Best's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

56.     Upon information and belief, Office Supply Services, Inc. (hereinafter "OSS") was and is a domestic business corporation with a principal place of business in New York. OSS was incorporated on or around June 7, 2019. OSS purports to be owned or controlled by Liudmyla Lypniakova.  OSS'involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

57.     Upon information and belief, Defendant, Prompt Process Invest Services, Inc.

(hereinafter "Prompt") was and is a domestic business corporation with a principal place of business in New York. Prompt was incorporated on or around June 7, 2019, and purports to be owned or controlled by Liudmyla Lypniakova. Prompt's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

58.    Upon information and belief, Defendant, Liudmyla Lypnikova (hereinafter referred to as "Lypnikova") resides in and is a citizen of New York. Liudmyla Lupniakova, through OSS and Prompt, was financially enriched by one or more the PC defendants in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

59.     Upon information and belief, One of Kind Transport, Inc. (hereinafter "One of Kind") was and is a domestic business corporation with a principal place of business in New York. One of Kind was incorporated on or around October 5, 2016, and purports to be owned or controlled by Leonid Pogoriler. One of a Kind, and its purported owners were financially enriched by one or more of the PC defendants, in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers. One of Kind's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

60.    Upon information and belief, Prof Collection & Litigation Services Inc. (hereinafter "Prof Collection") was and is a domestic business corporation with a principal place of business in New York. PDP was incorporated on or about July 11, 2019. The owner of Prof Collection has been intentionally disguised. Prof Collection's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

61.    Upon information and belief, Professional Documents Preparation Inc., (hereinafter "PDP") was and is a domestic business corporation with a principal place of business in New York. PDP was incorporated on or about November 20, 2017. The owner of PDP has been intentionally

disguised.  PDP's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

62.    Upon information and belief, Rami El Suwi a/k/a Rami El Sum, resides in and is a citizen of New York. Rami El Suwi was financially enriched by one or more of the PC defendants, in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.  Rami El Suwi's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

63.    Upon information and belief, Romgo Tech Service Inc., (hereinafter "Romgo") was and is a domestic business corporation with a principal place of business in New York. Romgo was incorporated on or around April 17, 2020.  The owner of Romgo has been intentionally disguised.  Romgo's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

64.    Upon information and belief, Defendant, SHN Global Inc. (hereinafter "SHN") was and is a domestic business corporation with a principal place of business in New York. SHN was incorporated on or around November 19, 2018.  The owner of SHN has been intentionally disguised.  SHN's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

65.    Upon information and belief, Defendant, STGG Enterprises Corp. (hereinafter "STGG") was and is a domestic business corporation with a principal place of business in New York. STGG was incorporated on or around June 6, 2018. STGG purports to be owned and controlled by Sojida Bakoeva.

66.    Upon information and belief, Defendant, Supreme Trans Inc. (hereinafter "Supreme") was and is a domestic business corporation with a principal place of business in New

York. Supreme was incorporation on or around January 25, 2019. Supreme purports to be owned and controlled by Sojida Bakoeva.

67.    Upon information and belief, Sojida Bakoev (hereinafter referred to as "Bakoeva") resides in and is a citizen of New York. Sojida Bakoeva, through STGG and Supreme was financially enriched by one or more of the PC defendants, in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.

68.    Upon information and belief, Defendant, West East Advertising & Marketing Inc., (hereinafter "West") was and is a domestic business corporation with a principal place of business in New York. West was incorporated on or around January 16, 2018.  The owner of West has been intentionally disguised.  West's involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

69.    Upon information and belief, Defendant, Konstantin Borisov a/k/a/ Konstantin Burasov, (hereinafter "KB") resides in and is a citizen of New York. KB, by and through his participation both as himself and under the fictitious company of Konstantin Burasov Tech Services, was financially enriched by one or more of the PC defendants, in furtherance of the scheme to obtain benefits for fraudulent services billed to Liberty Mutual and other insurers.  KB and Konstantin Burasov Tech Services' involvement in this fraudulent scheme was uncovered when it was listed as a payee in the bank records of the PC Defendants.

## VENUE

70.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims brought under 18 U.S.C. § 1961 *et seq.* (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to

28 U.S.C. § 1367 and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

71.    Pursuant to 28 U.S.C. § 1332(a)(1), this Court also has jurisdiction over this action because Plaintiffs and Defendants are citizens of different States; no Plaintiff is a citizen of the same state as any Defendant; and the amount in controversy exceeds $75,000.00.

72.    Venue in the Eastern District is appropriate pursuant to 28 U.S.C. § 1391(b), as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I.    An Overview of the No-Fault Laws and Licensing Requirements

73.    Liberty Mutual underwrites automobile insurance in the State of New York.

74.    New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the healthcare services that they need. Under New York's Comprehensive Motor Vehicle Reparations Act (N.Y. Ins. Law Section 5101, *et seq*.) and the No-Fault Regulation (11 NYCRR 65, *et seq*.) automobile insurers are required to provide personal injury protection benefits ("No-Fault benefits") to their insureds.

75.    No-Fault benefits include up to $50,000.00 per insured for necessary expenses that are incurred for healthcare goods and services. An insured can assign his/her rights to the provider(s) of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered by submitting the claim form required by the New York State Department of Insurance, commonly referred to as an "NF-3". In the alternative, a healthcare provider may submit claims using the Health Care Financing Administration

insurance claim form (known as the "HCFA-1500 Form").

76.     Pursuant to the No-Fault Regulation, only healthcare providers in possession of a direct assignment of benefits are entitled to bill and collect No-Fault benefits.  There is both a statutory and regulatory prohibition against payment(s) of No-Fault benefits to anyone other than the patient or his or her healthcare provider.

77.     For a healthcare provider to be eligible to bill and to collect charges from an insurer of healthcare services pursuant to Insurance Law Section 5102(a), it must be the actual provider of the service.   Under the Insurance Law and No-Fault Regulation, a professional service corporation is not eligible to bill for services, or to collect for those services from an insurer, where the services were rendered by persons who are not employees of the professional corporation.

78.     In the interest of protecting patients, New York limits the ownership and payment of healthcare services to licensed professionals and strictly circumscribes the ability of laypersons to engage in the business of healthcare services.  Accordingly, not only is a layperson prohibited from the practice of a profession, laypersons may not own, operate, or derive economic benefit from a professional healthcare practice.

## II.     Only a Licensed Professional Can Own a Professional Corporation or Profit from a Professional Corporation Which Performs Such Professional Healthcare Service(s)

79.     Historically, the No-Fault system has been a vehicle utilized by unscrupulous individuals as a means to submit fraudulent insurance claims for financial gain.

80.     In the State of New York, to the extent that a healthcare practitioner wishes to provide professional services through a corporate entity, that individual must be appropriately licensed by the State and provide such services through a legally constituted professional corporation. *See* Business Corporations Law (BCL) § 1501, *et seq.*

81.     The owners or members of a professional corporation must be professionals who

are licensed to practice the profession. *See* BCL §1503.  An individual not licensed within the same profession as the professional corporation may not engage in the practice of the profession or be a voting member of a professional corporation that provides such services.  *See* BCL §§ 1504, 1508.  A professional corporation cannot engage in any profession or business outside the scope of the professional services for which it was incorporated.  *See* BCL §1503. Furthermore, a healthcare professional may not share control their practice or split fees or with individuals who are not licensed in their profession. N.Y. Educ. Law. §6530(19).

82.    The authority of a professional corporation to deliver services is contingent upon its continuing compliance with New York's Business Corporation Law and Education Law.  Here, the Complaint alleges violations of the Business Corporation Law, Education Law and No-Fault Regulation.  These violations stand as a direct impediment to Defendants' entitlement to No-Fault benefits.

### III.    Licensed Professionals are Prohibited from Sharing Fees with Non-Professionals

83.    A licensed healthcare professional is prohibited from sharing fees with non-professionals. Pursuant to Education Law § 6509(9) and the implementing regulation at 8 NYCRR § 29.1(b)(4), a licensed professional is prohibited from permitting any person to share in the fees for professional services, other than another person or entity authorized to practice the same profession.

### IV.    No-Fault Healthcare Providers are Not Entitled to Recover for Services Performed by Independent Contractors

84.    11 NYCRR §65-3.11(a) states:

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay benefits directly to

> providers of health care services as covered under section five thousand one hundred two (a)(1) of this article, or to the applicant's employer for loss of earnings from work as authorized under section five thousand one hundred two (a)(2) of this article. Death benefits shall be paid to the estate of the eligible injured person.

85.     The courts have interpreted 11 NYCRR §65-3.11(a) to prohibit a billing provider from recovering assigned first-party No-Fault benefits where the medical services were performed by an independent contractor. *See:* A.M Medical Services, P. C. v. Progressive Casualty Ins. Co., 953 N.Y.S.2d 219 (App. Div. 2d Dep't 2012); Health & Endurance Medical, P. C. v. Liberty Mutual Ins. Co., 19 Misc 3d 137(A), N.Y. Slip Op. 50864(U) (App. Term 2d & 11th Dists. Apr. 14, 2008); East Coast Acupuncture, P.C. v. New York Cent. Mutual Ins., 18 Misc.3d 139(A), N.Y. Slip Op. 50344(U) (App. Tenn 2d & 11th Dists. Feb. 21, 2008); V.S. Medical Services P. C. v. Allstate Ins. Co., 14 Misc.3d 130(A), N.Y. Slip Op. 50016(U), (App. Term 2d & 11th Dists. Jan. 2, 2007); Health and Endurance Medical P. C. v. State Farm Mutual Auto Ins. Co., 12 Misc.3d 134(A), N.Y. Slip Op. 5119 l(U) (App. Term 2d & 11th Dists. June 22, 2006); A.B. Medical Services PLLC v. Liberty Mutual Ins. Co., 9 Misc.3d 36, (App. Term 2d & 11th Dists. 2005); Rockaway Boulevard Medical P.C. v. Progressive Ins., 9 Misc.3d 52 (App. Term 2d & 11th Dists. 2005).

## V.    Historical Background and The Defendants' Current Fraudulent Scheme

86.     Beginning in as early as June 2019 and continuing through the present, a fraudulent scheme has existed which entails the submission of inflated charges for medically unnecessary healthcare services rendered pursuant to a pre-determined fraudulent treatment protocol, seeking reimbursement from No-Fault insurance carriers such as Liberty Mutual.

87.      The scheme was devised and implemented by unidentified laypersons who arrange the rendition of transient healthcare services at various multidisciplinary No-Fault clinics

("clinics").  These clinics comprise a network of healthcare clinics throughout the New York Metropolitan area that almost exclusively cater to No-Fault patients and offer a wide range of services.  Several, if not all, of these clinics have been, or currently are, under suspicion for operating improperly for a multitude of reasons.

88.    The clinics collectively provide an "established route" for transient healthcare providers an opportunity to access the clinics' patient pool which is arranged by unidentified laypersons who act as clinic controllers.

89.    Rather than recruit an existing physical therapy corporation, the clinic controllers recruit a New York State licensed physical therapist willing to enter into an illegal agreement to incorporate a professional corporation using his or her name and license.   The entity then formed does not maintain a private practice outside of the scheme and is formed solely for the purpose of carrying out the fraudulent treatment protocol.

90.    Once established and placed at the clinic locations, the physical therapy professional corporation renders Fraudulent Services in a transient manner along the clinics' "established route".

91.    In order to avoid detection, the scheme operates cyclically approximately every four to six months whereby the newly created physical therapy professional corporation bills in bulk until it is replaced by a newly named entity.  While the constant conversion of entities has managed to mask the scheme from exposure, Liberty Mutual's investigation uncovered this historical pattern, revealing the scheme's true chronological duration.

92.    Liberty Mutual's investigation further unveiled that the PC Defendants have participated in an ongoing fraudulent scheme first initiated by non-party JA Physical Therapy, P.C., then assumed chronologically by MC, Raine, Better Hands, Go Flex and lastly by non-party

Jeva Physical, P.C.  Throughout the various incarnations of the fraudulent scheme, the layperson owners and support services were always present (albeit behind the scene) secretly funneling money out of the PC Defendants to their owner personal accounts through their corporate alter-egos.

93.    Upon information and belief, in order the mask the activities, the non-professional defendants, lead chiefly by Vladimir Gehykman, engaged the professional defendants, Cuadra, Pesidas, Ballener and Parcon, amongst others, and induced them to create the PC Defendants, MC, Raine, Better Hands, and Go Flex, respectively.  After the creation of each of the PC Defendants (MC, Raine, Better Hands, and Go Flex) each of their paper-owners (Cuadra, Pesidas, Ballener and Parcon) ceded all aspects of operational control to the non-professional defendants.  The non-professional defendants then used their various corporate alter-egos to siphon monies and funds from the PC Defendants to their own personal accounts. For their part in the illegal process, Cuadra, Pesidas, Ballener and Parcon each agreed to a 90/10 split with Vladimir Gehykman and the other non-professional defendants – with Vladimir Gehykman, the support services and the other non-professional defendants receiving the 90% share.  In an effort to conceal the fraudulent nature of the scheme and to prevent arousing suspicions, Vladimir Gehykman would only allow each PC Defendant a 10-week run before swapping it out for a new PC Defendant.

94.    Upon information and belief, the only involvement that Cuadra, Pesidas, Ballener or Parcon had with each of their respective PC Defendant was to sign blank checks and receive their 10% share of the illegal operation.

95.    Each physical therapy professional corporation involved in the fraudulent scheme has assumed the same "established route" without the need to advertise or engaging in any marketing activities to generate business or attract patients.  Each physical therapy professional

corporation utilizes substantially the same medical/treatment forms, performs the same or identical types of services and most often fails to take into consideration the prior treatment and testing performed by the other defendants that are part of the same "established route".

96.     Through no legitimate means, each physical therapy professional corporation has been permitted access to a patient pool shared by the participating clinics.

97.     In order to gain access to the patient base, the nominal owner of the physical therapy corporation merely enters into an illegal kick-back and referral agreement with the clinic controllers who accept some form of remuneration for the improper referral of patients.

98.     Moreover, there is no actual purchase or sale of a practice by the contemporary physical therapy professional corporation of the previous one which would include a transfer of a patient base.

99.     The scheme, as it has existed and exists present-day, is one powered by illegal kickback and referral agreements, wherein the Professional Defendants have lent their name and professional licenses to the clinic controllers for the creation and control of the PC Defendants.

100.     The nature and scope of the illegal kickback and referral agreements is demonstrated in the bank records of each of the PC Defendants, which unequivocally demonstrates monies being transferred out of the PC Defendants' bank accounts to the various non-professional defendants.

101.     For instance, the bank accounts of the PC Defendants, MC, Raine, Better Hands, and Go Flex all demonstrate commonality of payments to the various non-professional defendants and the support services.

102.     Thus, the PC Defendants came into existence only to initiate the scheme or replace the former professional corporation and have not maintained any legitimate practice other than to

provide the transient Fraudulent Services.

103.    Each of the PC Defendants request payments and inquires be directed to a mail drop box without an actual office and operate on a transient basis at various suspect No-Fault multidisciplinary clinics, which server as the gatekeeper and who supply a patient base.   The suspect clinic locations include, among others, the following addresses:

*PC Defendant MC Physical Therapy PC*

- 3910 Church Avenue, Brooklyn, New York
- 550 Remsen Avenue, Brooklyn, New York
- 409 Rockaway Avenue, Brooklyn, New York
- 105-10 Flatlands Avenue, Brooklyn, New York[1]
- 420 Doughty Boulevard, Inwood, New York
- 175 Fulton Street, Hempstead, New York
- 97-01 101 Ave, Queens, New York
- 6937 Myrtle Avenue, Queens, New York
- 220-01 Jamaica Avenue, Queens, New York
- 180-09 Jamaica Avenue, Queens, New York
- 204-12 Hillside Avenue, Queens, New York[2]
- 4014A Boston Road, Bronx, New York
- 332 East 149th Street Bronx, New York
- 788 Southern Boulevard, Bronx, New York

*PC Defendant Raine M. Pesidas Physical Therapy PC*

- 3910 Church Avenue, Brooklyn, New York
- 550 Remsen Avenue, Brooklyn, New York
- 60 Belmont Avenue, Brooklyn, New York
- 409 Rockaway Avenue, Brooklyn, New York

---

[1]    The submission of fraudulent claims emanating out of the multi-disciplinary medical clinic located at 105-10 Flatlands Avenue, Brooklyn, New York is currently the subject of litigation. See Government Employees Insurance Company, et al. v. Starrett City Medical, P.C., et al., 1:21-cv-00059 and State Farm Mutual Automobile Insurance Company, et al., v. Metro Pain Specialists, P.C., et al., 1:21-cv-05523.

[2]    The submission of fraudulent claims emanating out of the multi-disciplinary medical clinic located at 204-12 Hillside Avenue, Hollis, New York is currently the subject of litigation.   See Government Employees Insurance Company, et al. v. Starrett City Medical, P.C., et al., 1:21-cv-00059 and State Farm Mutual Automobile Insurance Company, et al., v. Metro Pain Specialists, P.C., et al., 1:21-cv-05523.

- 3041 Avenue U, Brooklyn, New York
- 828 Utica Avenue, Brooklyn, New York
- 105-10 Flatlands Avenue, Brooklyn, New York
- 430 West Merrick Road, Valley Stream, New York
- 1975 Linden Boulevard, Valley Stream, New York
- 175 Fulton Street, Hempstead, New York
- 97-01 101 Ave, Queens, New York
- 6937 Myrtle Avenue, Queens, New York
- 204-12 Hillside Avenue, Queens, New York
- 4014A Boston Road, Bronx, New York
- 14 Bruckner Boulevard, Bronx, New York
- 1120 Morris Park Avenue, Bronx, New York
- 1320 Louis Nine Boulevard, Bronx, New York

*PC Defendant Better Hands Physical Therapy PC*

- 3910 Church Avenue, Brooklyn, New York
- 550 Remsen Avenue, Brooklyn, New York
- 3027 Avenue V, Brooklyn, New York
- 409 Rockaway Avenue, Brooklyn, New York
- 3041 Avenue U, Brooklyn, New York
- 828 Utica Avenue, Brooklyn, New York
- 105-10 Flatlands Avenue, Brooklyn, New York
- 430 West Merrick Road, Valley Stream, New York
- 1975 Linden Boulevard, Valley Stream, New York
- 97-01 101 Ave, Queens, New York
- 204-12 Hillside Avenue, Queens, New York
- 180-09 Jamaica Avenue, Queens, New York
- 33-10 101st Street, Queens, New York
- 8655 Broadway, Elmhurst, New York
- 4014A Boston Road, Bronx, New York
- 332 149th Street, Bronx, New York
- 14 Bruckner Boulevard, Bronx, New York
- 1120 Morris Park Avenue, Bronx, New York

*PC Defendant GO Flex Rehab Physical Therapy, P.C*

- 2896 Shell Road #97, Brooklyn, New York
- 430 West Merrick Road, Valley Stream, New York

*Locations Utilized by non-parties JA Physical Therapy and Jeva Physical Therapy*

- 240-12 Hillside Avenue, Jamaica, New York
- 1120 Morris Park Avenue, Bronx, New York

- 3432 Jerome Avenue, Bronx, New York
- 788 Southern Boulevard, Bronx, New York
- 1320 Louis Nine Blvd, Bronx, New York
- 550 Remsen Avenue, Brooklyn, New York
- 3910 Church Avenue, Brooklyn, New York
- 3209 Fulton Street, Brooklyn, New York
- 60 Belmont Avenue, Brooklyn, New York
- 3041 Avenue U, Brooklyn, New York
- 172-71 Jamaica Avenue, Queens, New York
- 220-01 Jamaica Avenue, Queens, New York
- 180-09 Jamaica Avenue, Queens, New York
- 97-01 101 Avenue, Queens, New York
- 227A East 105th Street, New York, New York
- 430 West Merrick Road, Valley Stream, New York
- 1975 Linden Boulevard, Valley Stream, New York
- 409 Rockaway Avenue, Brooklyn, New York
- 4250 White Plains Road, Bronx, New York
- 55 East 115th Street, New York, New York,
- 107-48 Guy R. Brewer Boulevard, Jamaica, New York

104. The PC Defendants appear to have no fixed treatment locations but instead appear at the participating hub clinic locations to render the Fraudulent Services.

105. To fulfill the preordained demand for Fraudulent Services, the PC Defendants retain independent contractors, who are at most technicians that are available to appear as directed with equipment. The independent contractors retained are instructed to appear at the participating multidisciplinary No-Fault clinics and are informed what services are to be purportedly performed without consideration of actual patient need. **The bank records of the PC Defendants even acknowledge the payment of independent contractors on a 1099 basis, either in direct payments to an individual or to a staffing agency.**

106. The Fraudulent Services dictated are measured to fully exploit New York's No-Fault insurance system and are to the detriment of the patient being victimized. These independent contractors help maintain a larger fraudulent treatment protocol in place at the participating multidisciplinary No-Fault clinics in that their alleged findings falsely justify the prescription or

continuation of further fraudulent treatment and diagnostic testing leading to possible surgical intervention.

107.    After the purported rendition of Fraudulent Services, the PC Defendants submit billing to Liberty Mutual, as well as other carriers, misrepresenting that the services were performed by the Professional Defendants who are the nominal owners of the PC Defendants, or employees of the PC Defendants, without truthfully indicating that the Fraudulent Services charged are performed, if performed at all, by independent contractors.

108.    At each of the service locations, pursuant to the illegal kickback and referral agreement, the PC Defendants, through the use of independent contractors, allegedly rendered, or caused to be rendered, ROM/MT and ALM Tests to Liberty Mutual's Insureds.  In exchange for being allowed to perform the Fraudulent Services, the PC Defendants paid the clinic controllers for patient referrals and ensured that the test results allegedly produced as a result of the Fraudulent Services would justify further treatment and testing by the referring providers.

109.    The Professional Defendants always knew and understood that they could gain access to the participating No-Fault multidisciplinary clinics' patient pool only if they agreed to illegally pay kickbacks, or other forms of remuneration, to the unlicensed layperson clinic controllers.

110.    The success of the PC Defendants in generating profit are dependent upon the improper kickback and referral agreement, rather than through any legitimate means, which has supplied the PC Defendants with a multitude of treatment locations, permitting a voluminous amount of billing generated and an avoidance of detection from insurance carriers, such as Liberty Mutual.

111.    The PC Defendants were further assisted by the support services, whose material

support was provided by the various business which operated in furtherance of the scheme. These businesses would provide support by providing a location where the fraudulent services could and or were performed, providing access to the stream of patients to push the protocol, assist in the quick set up and location of the PC Defendants businesses, generate billing and medical forms to comply with the basic requirements of medical bill submission, amongst other additional supports.

112.    The support services businesses were able to assist in the long-term perpetration of the scheme, as their involvement is difficult to track, and the layperson owned business, as noted could be formed at any moment as needed to provide the support needed to further continue the scheme.

113.    Notably, the support services were generally owned and controlled by the same groups of people. Where the owner or person in control was not known, the businesses were generally created on or around the same date as the date of incorporation of the other support services. However, as the scheme developed, some of the incorporation documents for the support services started to hide the ownership of the entity, as is demonstrated with Prof Collection & Litigation Services Inc., Advertising & Web Inc., Professional Documents Preparation Inc., Romgo Tech Service Inc., SHN Global Inc., and West East Advertising & Marketing Inc.

114.    The support services would also generally have the same service of process address, which indicates common ownership and control, and generally do not indicate in their filings with the Department of State who the agent is, but instead election for the business to be the registered agent.

115.    In some instances, the support services are not legitimate businesses, and are instead fictitious names which further allowed the PC Defendants and the support services to avoid detection in furtherance of the scheme to obtain reimbursement for the fraudulent services.

116. The PC Defendants would also pre-sign checks and other financial instruments which would allow the laypersons to issue payment to the support services without the oversight of the PC Defendant owners, allowing the scheme to further avoid detection as the transactions would appear to be legitimate and authorized by the PC Defendant owners.

117. The monies paid to the support services by the PC Defendants were made to continue the stream of patients and incoming money from Liberty Mutual and other such insurers. These support services would provide support via activities such as but not limited to; patient transportation services, billing and claim management services, collection and litigation efforts, office set up and furnishing, computer system support, marketing services providing office space to be utilized by the PC defendants and other support material to the continuation of the scheme.

118. While the support services were designed to appear as legitimate companies, the support services companies seem to have no established web or physical presence. The support services were also formed close in time to that of the PC defendants and in furtherance of the scheme to obtain benefits for the fraudulent services.

119. Similar to the PC Defendants, the majority of the support services would generally not conduct any private business outside of the scheme and were formed solely for the purpose of continuing the fraudulent treatment protocol scheme.

120. The bank records for each of the PC Defendants demonstrates the disbursement of the PC Defendants' funds to the support services and other non-professional defendants. Although not all named as defendants in this action, the PC Defendants' bank records demonstrate the payment of hundreds of thousands of dollars to other beneficiaries as part of the ongoing scheme.

121. Upon information and belief, some examples of the illicit distribution of the monies from the PC Defendants' bank records is as follows:

- Billing & Collection, Inc. received approximately $40,000.00 from Go Flex in a 45-day period of time.

- NY Collection & Billing Services received approximately $67,000.00 from Go Flex in a 45-day period of time.

- Prof Collection & Litigation received approximately $89,000.00 from Go Flex in a 45-day period of time; received approximately $47,000.00 from Jeva in a 45-day period of time; and received approximately $24,000.00 from Better Hands in a 12-day period of time.

- Quick Billing & Collection Inc received approximately $67,000.00 from Go Flex in a 45-day period of time; received in excess of $100,000.00 from Better Hands in a 120-day period of time; received nearly $100,000.00 from Jeva in a 70-day period of time.; and received approximately $54,000.00 from Raine in a 60-day period of time.

- One of Kind received approximately $8,500.00 from Better Hands; $9,200.00 from Jeva; $5,600.00 from Raine; and $3,000.00 from Go Flex.

- Office Supply Services Inc. received approximately $26,000.00 from Jeva in a 15-day period of time; $8,300.00 from Go Flex; and $27,000.00 from Better Hands in a 45-day period of time.

- All Legal Support Services received approximately $30,000.00 from Go Flex; $8,800.00 from Raine; $44,000.00 from Better Hands; and $90,000.00 from Jeva.

- 3902 LLC received approximately $15,000.00 from Jeva; $13,000.00 from Better Hands; $2,200.00 from Go Flex; $4,100.00 from MC and $600.00 from Raine.

- 1001 NY Corp received approximately $45,000.00 from Raine in a 40-day period of time and $40,000.00 from MC in a 35-day period of time.

- Mironcom Expert received approximately $45,000.00 from Raine in a 9-day period of time and $40,000.00 from MC in a 40-day period of time.

- Supreme Transportation Inc. received approximately $53,000.00 from MC in a 14-day period of time; and received approximately $70,000.00 from Raine in a 50-day period of time.

- West East Advertising & Marketing received approximately $30,000.00 from Go Flex in a 30-day period of time; $40,000.00 from Better Hands in a 45-day period of time; and $63,000.00 from Jeva within a 60-day period of time.

- Romgo received approximately $14,000.00 from Go Flex; $5,400.00 from Better Hands; and $52,000.00 from Jeva.

- MNDNT Corp. received approximately $43,000.00 from Raine in a 20-day period of time and $61,000.00 from MC in a 35-day period of time.

- Konstantin Borison received approximately $2,000.00 from Raine; $1,800.00 from MC; $5,200.00 from Better Hands; and $4,800.00 from Jeva.

- Lioudmila Berseneva received approximately $17,000.00 from Jeva; $11,400.00 from Better Hands; $7,200.00 from MC; and $15,000.00 from Raine.

122.    The service locations participating in the kickback arrangement partner well with the PC Defendants as they too appear to have been engaging in a similar fraudulent treatment protocol. Their likewise fraudulent rendition of healthcare services through their gatekeep role essentially guarantees the PC Defendants their anticipated profit.

**VI.    The Fraudulent Treatment Protocol**

123.    Most Insureds who were referred to the PC Defendants were involved in relatively minor motor vehicle accidents and at most suffered soft-tissue injuries which are not significant health concerns.

124.    In order to fulfill the fraudulent treatment protocol developed by the clinic controllers, independent contractors are arranged to travel along the "established route" to make appearances on behalf of the PC Defendants and purportedly perform the pre-designated Fraudulent Services.

A.    Range of Motion and Muscle Testing (ROM/MT)

125.    The PC Defendants have routinely submitted and/or continue to submit billing for reimbursement of medically unnecessary ROM/MT under Current Procedural Terminology ("CPT") codes 95831 and 95851.

126.    CPT codes 95831 and 95851 are described as follows:

**95831** Muscle Testing, manual (separate procedure) with report; extremity (excluding hand) or trunk

>**95851** Range of motion measurements and report (separate procedure); each extremity (excluding hand) or each trunk section (spine)

127.    The bills submitted by the PC Defendants consistently included multiple units of CPT codes 95831 and 95851.

128.    These charges were fraudulent in that: (i) the ROM was medically unnecessary; (ii) the PC Defendants unbundle the charges for the ROM to artificially increase the amount they could charge Liberty Mutual; and (iii) the ROM was performed pursuant to a pre-determined fraudulent treatment protocol and illegal kickback and referral agreement.

129.    Range of motion is the measurement of movement around a specific joint or body part.  Each joint has its own level of flexibility that is expressed in degrees.  There are three primary types of range of motion: passive range of motion, active-assistance range of motion and active range of motion.

130.    Physicians, or other healthcare professionals, traditionally test range of motion manually.  Range of motion is deduced by mere observation, or if assistance is required, a goniometer is commonly used. A goniometer is an instrument that measures angle at a joint with degrees of an angle from zero to 180 or 360 degrees. Other tools used to measure joint angle at extension and flexion are an inclinometer, which assists in measuring the spinal angle, or even a tape measure for various joints.

131.    Muscle testing measures effective performance of a movement in relation to the forces of gravity and manual resistance.

132.    Muscle strength is likewise manually tested by having a patient move his or her body in a particular direction against the resistance applied by the physician or other healthcare professional.

36

133.    An integral part of both an initial examination and follow-up examination of any patient involved in an automobile collision is to test range of motion and muscle strength as these tests provide a baseline for injury assessment and treatment planning. The results are documented to chart his or her progress, or lack thereof.  Range of motion and muscle testing are integral components of a physical examination that are not separable.  The Fee Schedule does not permit separate charges for range of motion and muscle testing when performed contemporaneously with an examination.

134.    Computerized range of motion and muscle testing are virtually identical to the manual range of motion and muscle testing described above except for a digital printout of findings as opposed to manual notations. While the test produces a digital printout of data, the measurements are inexact compared to those obtained through manual and computerized range of motion and muscle testing. Therefore, the test produces duplicative, but less certain, conclusions that fail to aid or alter a patient's treatment plan.

135.    The ROM/MT assessments allegedly performed by the PC Defendants occurred during or near the time of the patient's initial or follow-up examination and were medically unnecessary and duplicative of the earlier examination services performed.

136.    Liberty Mutual's Insureds' medical records reveal the Insureds underwent range of motion testing during physician examinations.

137.    When range of motion assessment services are not provided on the same day as an initial or follow-up examination, then they may be appropriately billed using CPT codes 95851-95852.  However, in all circumstances, medical records must clearly identify and support the timing rationale for the provision of these additional assessment services.  The PC Defendants failed to offer an explanation that would warrant additional testing.  Charges brought separately

under these CPT codes were fraudulent attempts to double dip into the Plaintiffs' wallet as these services are built into the evaluation CPT codes.

138.   When muscle strength assessment services are not provided on the same day as an initial or follow-up examination, then they may be appropriately billed using CPT codes 95831-95834. Again, in all circumstances, the medical records must clearly identify and support the timing rationale for the provision of these additional assessment services.  The PC Defendants failed to offer an explanation that would warrant additional testing.  Charges brought separately under these CPT codes were deceitful as these services are incorporated into the evaluation CPT codes.

139.   The PC Defendants billed the alleged services in a manner offensive to the rules promulgated under the Workers' Compensation Fee Schedule.

140.   First, the PC Defendants commonly unbundled multiple charges for MT into separate charges per extremity under CPT code 95831, rather than use CPT code 95833 which encompass a total evaluation of the body.

141.   Second, when these tests are performed on the same date they should be billed under CPT code 97750 which is a "time-based" code allotting payment for every 15 minutes spent. A description of CPT code 97750 reads:

> **97750** Physical performance test or measurement (eg, musculoskeletal, functional capacity), with written report, each 15 minutes.

142.   A physical performance test is a multi-varied test including extremity testing for strength, dexterity, or stamina, and muscle strength testing using torque curves during isometric and isokinetic exercise that is documented into a written report.

143.   The PC Defendants intentionally unbundled medically unnecessary ROM/MT tests, duplicative of components of the patients' initial and follow up examinations with their

treating physicians and padded their billing using CPT codes 95831 and 95851 in furtherance of the predetermined fraudulent treatment protocol.

144.    Furthermore, based on the medical records of Liberty Mutual's Insureds, testing purportedly performed appears to have been completed in a deficient manner as it was done without respect to the affected body parts.  Tests were administered bilaterally when only one side of the body was affected.

145.    On average, tests were performed at several times during the first three months of an Insured's treatment.

B.    Activity Limitation Measurement Testing (ALM tests)

146.    The PC Defendants also routinely submitted bills seeking reimbursement for ALM tests under CPT code 97799.

147.    CPT code 97799 is defined in the Workers' Compensation fee schedule as, "[u]nlisted physical medicine/rehabilitation service or procedure." It is a "by report" code. The Ground Rules in the Workers' Compensation fee schedules apply to No-Fault unless they require reports specific to Workers' Compensation. 11 NYCRR 68.1(b)(1).

148.    Ground Rule 3 to Chapter 1 (Introduction and General Guidelines) of the Workers' Compensation Medical Fee Schedule sets forth reporting requirements for services billed with CPT codes which are "by report" or "BR." "BR" in the Relative Value column represents services that are too variable in the nature of their performance to permit assignment of relative value units. Fees for such procedures need to be justified "by report." Pertinent information concerning the nature, extent, and need for the procedure or service, the time, the skill, and equipment necessary, etc., is to be furnished. A detailed clinical record is not necessary, but sufficient information shall be submitted to permit a sound evaluation. For any procedure where the relative value unit is listed

in the schedule as "BR," the physician shall establish a relative value unit consistent in relativity with other relative value units shown in the schedule.

149.    Like the other Fraudulent Services discussed supra, the PC Defendants' charges for ALM tests were fraudulent in that the tests were: (i) medically unnecessary; and (ii) performed pursuant to the fraudulent treatment protocol and illegal kickback and referral agreement between the Defendants and the clinic controllers.

150.    The PC Defendants purportedly provided the ALM tests despite knowing that these tests were medically unnecessary and duplicative of the manual range of motion and muscle testing performed during the Insured's initial and follow up examinations, as well as the computerized range of motion and muscle testing the PC Defendants also purported were performed.

151.    Similar to computerized range of motion and muscle testing, an ALM test merely provides a digital printout of an Insured's muscle strength rather than results manually notated.

152.    The ALM test results are not intended to honestly diagnose or treat any impairment but are structured to enable the Defendants to submit as many charges permissible under the No-Fault fee schedule.

153.    Further, since manual and computerized range of motion and muscle testing offer adequate findings of a person's physical limitations when compared to a physical performance test, this test is not employed for any real diagnostic advantage.

154.    Moreover, the PC Defendants typically charged for ALM tests using CPT code 97799 at an inflated charge.

155.    These tests should be billed as physical performance tests under CPT code 97750 at a lesser charge for every fifteen minutes of testing. As previously discussed, a physical performance test is a multi-varied test including extremity testing for strength, dexterity, or

stamina, and muscle strength testing using torque curves during isometric and isokinetic exercise that is documented into a written report.

156.    The PC Defendants intentionally unbundled medically unnecessary ALM tests, duplicative of components of the patients' initial and follow up examinations with their treating physicians and padded their billing using CPT code 97799 in furtherance of the predetermined fraudulent treatment protocol.

157.    The PC Defendants' billing was routinely handled by one or more of the support services, who would submit the billing for the treatment to Liberty Mutual and other insurers who were under an obligation to process the bills in accordance with the applicable No-Fault regulations.  **Each of the PC Defendants' bank accounts demonstrate significant monetary transfers to the support services and non-professional defendants for billing and collection related services.**

## VII.    The Defendants' Fraudulent Concealment and Plaintiffs' Justifiable Reliance

158.    The PC Defendants have submitted, or caused to submitted, a voluminous number of NF-3, HCFA-1500 forms, and supporting documentation to the Plaintiffs seeking payment for Fraudulent Services it knowingly knew it was not entitled to receive.  A representative sample of the PC Defendants fraudulent submissions are attached to the charts annexed hereto as **Exhibits "A", "B", "C"** and **"D"**.

159.    The NF-3, HCFA-1500 forms, and supporting documentation submitted to the Plaintiffs contained material misrepresentations claiming the Fraudulent Services were medically necessary when they were provided, to the extent they were provided at all, pursuant to a fraudulent treatment protocol.

160.    The NF-3, HCFA-1500 forms, and supporting documentation submitted to the Plaintiffs contained misrepresentations exaggerating the level and nature of the Fraudulent Services performed, to the extent they were performed at all, as the Fraudulent Services were rendered pursuant to a fraudulent treatment protocol.

161.    The PC Defendants disregarded legal and ethical obligations by submitting, or causing to be submitted, billing that it knew contained material misrepresentations.

162.    To aid in the submission of the NF-3 and HCFA-1500 forms, the PC Defendants would routinely utilize the support services Defendants who would process these forms for the PC defendants for submission to the Plaintiffs.

163.    In order to compel the Plaintiffs to pay for the Fraudulent Services charged, the PC Defendants took concerted efforts to conceal their illicit operation. To prevent the Plaintiffs from detecting that the Fraudulent Services were rendered pursuant to a fraudulent treatment protocol, the PC Defendants intentionally misrepresented and concealed facts that would have exposed itself.

164.    The PC Defendants knew the Plaintiffs properly engage in business and follow the No-Fault claim procedures which were designed to promote swift and fair resolution of claims. Thereby hoping the Plaintiffs would not be able to detect its fraudulent submissions before the expiration of time to pay or deny claims.

165.    While the Plaintiffs grew suspicious of the PC Defendants' billing, they continued throughout the course of their investigation to abide by claim procedures set forth in the No-Fault regulations concerning the issuance of No-Fault denials and requests for additional verification.

166.    As a result, the Plaintiffs either: (i) timely paid claims; (ii) timely and appropriately denied claims for No-Fault benefits submitted by the PC Defendants; or (iii) timely issued requests

for additional verification with respect to all of the pending claims for No-Fault benefits submitted by the PC Defendants, and, therefore the Plaintiffs' time to pay or deny claims has not yet expired.

167.    The Plaintiffs are statutorily and contractually obligated to swiftly and fairly process claims within thirty days upon receipt. The NF-3, HCFA-1500 forms, and supporting documentation submitted to the Plaintiffs, containing the material misrepresentations described above, were submitted to induce payment by the Plaintiffs who were led to justifiably rely on them causing Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company to incur actual and potential damages of more than One Hundred Ten Thousand Dollars in damages.

168.    The Plaintiffs undertook a long investigation which comprised of collecting all fraudulent billing and medical reports for inspection and comparison, interviewing Insureds, conducting on-site inspections of the various hub facilities and database searches.

169.    As the investigation only recently concluded, the Plaintiffs were unable to minimize their damages until the results of the investigation were available.  This complaint was filed immediately after it was determined that the services rendered were fraudulent and in violation of New York Law and public policy.

## VIII.   Requirement to Appear for an EUO

170.    The No-Fault Regulation (the "Regulation") governs all claims for injuries made as a result of an automobile accident within the State of New York.

171.    The Regulation provides certain tools and mechanisms for an insurance carrier to investigate an accident and to confirm the durable medical equipment allegedly supplied as a result of any accident – this is done through conditions precedent to coverage or verification requests.

172.    The conditions precedent to coverage states the following at 11 NYCRR 65-1.1:

> MANDATORY    PERSONAL    INJURY    PROTECTION ENDORSEMENT, SECTION I, *Conditions*
>
> No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.
> *          *          *
>
> Proof of Claim; Medical, Work Loss, and Other Necessary Expenses. In the case of a claim for health service expenses, **the eligible injured person or that person's assignee or representative shall** submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered. The eligible injured person or that person's representative shall submit written proof of claim for work loss benefits and for other necessary expenses to the Company as soon as reasonably practicable but, in no event, later than 90 days after the work loss is incurred or the other necessary services are rendered. The foregoing time limitations for the submission of proof of claim shall apply unless the eligible injured person or that person's representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation. **Upon request by the Company, the eligible injured person or that person's assignee or representative shall**:
>
> (a)    execute a written proof of claim under oath;
>
> (b)    as may reasonably be required **submit to examinations under oath by any person named by the Company** and subscribe the same;
>
> (c)    provide authorization that will enable the Company to obtain medical records; and
>
> (d)    **provide any other pertinent information that may assist the Company** in determining the amount due and payable.

44

(emphasis added)

173.    11 NYCRR 65-3.5(c) states that the "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Section 11 NYCRR 65-3.8(f) dictates that nothing in the Regulation shall prevent an insurer from requesting full and complete proof of claim prior to the issuance of any payments or denials.

174.    The provision of the Conditions section that states "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage" has been interpreted by the Courts as establishing a condition precedent to coverage.

175.    The Appellate Term of the Supreme Court held in W&Z Acupuncture, P.C. v. Amex Assurance Company, 901 N.Y.S.2d 903 (App. Term, 2d Dep't 2009) that the appearance of a medical provider at an examination under oath is a condition precedent to coverage.  Specifically, the Court held that the "appearance of the eligible injured person's assignee at an EUO is a condition precedent to the insurer's liability on the policy."  Id.

176.    Pursuant to the applicable policy provisions, the Defendants were obligated to appear and complete an EUO as a condition precedent to coverage. Dover Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co., 28 Misc. 3d 140(A), 958 N.Y.S.2d 60 (App. Term, 1st Dep't 2010).

177.    11 NYCRR § 65-3.5(c) states that the "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Section 11 NYCRR 65-3.8(f) dictates that nothing in the Regulation shall prevent an insurer from requesting full and complete proof of claim prior to the issuance of any payments or denials.

178.    It has been uniformly held that the No-Fault Regulation's requirement for an

eligible injured person or their assignee to appear for an Examination Under Oath is a condition precedent to an insurer's liability under the policy.  *See,* Interboro Ins. Co. v. Clennon, 2014 NY Slip Op 00092 (App. Div., 2d Dep't 2014), *citing*, Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC, et al., 918 N.Y.S.2d 473, 82 A.D.3d 559, 560 (App. Div., 1st Dep't 2011), *leave denied,* 17 N.Y.3d 705 (2011); *See, e.g.,* Dover Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co., 28 Misc. 3d 140(A), 958 N.Y.S.2d 60 (App. Term, 1st Dep't 2010) (a provider's non-appearance warranted dismissal based upon "plaintiff's failure to comply with a condition precedent to coverage"); Five Boro Psychological Servs., P.C. v Progressive Northeastern Ins. Co., 27 Misc. 3d 141(A), 911 N.Y.S.2d 392 (App. Term, 2d Dep't 2010) ("the appearance of plaintiff's assignor at an EUO was a condition precedent to defendant insurer's liability on the policy"); Stephen Fogel Psychological, P.C. v. Progressive Cas. Ins. Co. 35 A.D.3d 720, 722, 827 N.Y.S.2d 217, 219 (App. Div. 2nd Dept., 2006) ("The appearance of the insured for IMEs at any time is a condition precedent to the insurer's liability on the policy").

179.    Once an eligible injured person, or their assignee, fails to comply with a condition precedent as set forth in the policy endorsements at 11 NYCRR § 65-1.1, such as a medical examination or examination under oath, the carrier's requirement to timely deny the bill is vitiated and the policy is void, *ab initio*.  Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC, 82 A.D.3d 559 (App. Div. 1st Dep't 2011)*, citing,* Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 N.Y.2d 195 (1997).

180.    Pursuant to the No-Fault Regulation, the PC Defendants had an absolute condition precedent to coverage to appear for an EUO.

A.    Liberty Mutual's Reasonable Basis for Requesting the EUO

181.    According to the Department of Insurance, N.Y. Comp. Codes R. & Reg. tit. 11 §

46

65-3.5(e) does not require an insurance carrier to provide a reasonable basis for requesting an EUO. A copy of New York State's Insurance Department Opinion dated December 22, 2006, is annexed hereto as **Exhibit "I"**.

182.    Nevertheless, Liberty Mutual's reasons for requesting the EUO of PC Defendants is detailed in this pleading when the history of the fraudulent scheme, its present-day application and the fraudulent treatment protocol dictating the Fraudulent Services allegedly performed by the PC Defendants.

B.    The PC Defendants are not eligible to Receive No-Fault Reimbursements by Failing to Appear for an EUO

183.    By refusing and failing to appear for an EUO, the PC Defendants have breached a condition precedent to coverage – the failure to meet this condition precedent to coverage leaves the Defendants ineligible to receive No-Fault reimbursements.

184.    The No-Fault Regulation contains explicit language in 11 NYCRR 65-1.1 that there shall be no liability on the part of the No-Fault insurer if there has not been full compliance with the conditions precedent to coverage. Specifically, 11 NYCRR 65-1.1 states:

> No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage.

185.    One such condition contained within the Regulation is the appearance of the Defendants at an EUO.

186.    The Regulation mandates at 11 NYCRR 65-1.1 that:

> Upon request by the Company, the eligible injured person or that person's assignee or representative shall:
>
> (a)  execute a written proof of claim under oath;
>
> (b)  as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the

same;

(c) provide authorization that will enable the Company to obtain medical records; and

(d) provide any other pertinent information that may assist the Company in determining the amount due and payable.

187.    The failure of the PC Defendants to appear at an EUO renders the PC Defendants ineligible to receive No-Fault reimbursements from Liberty Mutual for any treatment that was rendered by the Defendants for the claim in which the EUO of the Defendants were sought and the Defendants failed to appear.  Charts detailing by claim number, the receipt of Defendants' bills, the issuance of verification requests, the scheduling of the EUO and the timely denial of the claim is attached hereto respectively as **Exhibits "E" (MC), "F" (Raines), "G" (Better Hands)** and **"H" (Go Flex)**.

188.    The Appellate Term of the Supreme Court held in <u>W&Z Acupuncture, P.C. v. Amex Assurance Company</u>, 901 N.Y.S.2d 903 (App. Term, 2d Dep't 2009) that the appearance of a medical provider at an examination under oath is a condition precedent to coverage.  Specifically, the Court held that the "appearance of the eligible injured person's assignee at an EUO is a condition precedent to the insurer's liability on the policy."  *See also*, <u>Fogel v. Progressive</u>, 35 A.D.3d 720 (App. Div., 2d Dep't 2006).

189.    Moreover, as cited by the Appellate Term in <u>W&Z</u>, the No-Fault Regulation itself places an unconditional obligation on the Defendant to appear for an examination under oath.  The No-Fault Regulation requires the Defendant to appear for an examination under oath as demanded by Liberty Mutual.  The Defendants' refusal and failure to appear for an EUO is a violation of the No-Fault Regulation.

190.    The Appellate Division, First Department, held that where there is a failure to comply with a condition precedent to coverage, an insurer has "the right to deny all claims retroactively to the date of loss, regardless of whether the denials were timely issued.  Unitrin Advantage Ins. Co. v. Bayshore Physical Therapy, PLLC, et al., 918 N.Y.S. 2d 473 (App. Div., 1st Dep't. 2011), *leave to appeal denied,* 17 N.Y.2d 705 (N.Y. 2011).

191.    Based upon the PC Defendants' breach of a condition precedent to coverage by failing to appear for an EUO, Liberty Mutual is under no obligation to honor or pay for the claim in which the EUO of the Defendants were sought and the Defendants failed to appear.

## IX.    The Law Pertaining to Racketeer Influenced and Corrupt Organizations

192.    The Organized Crime Control Act of 1970 was established in order to prevent and punish racketeering activity.  *See* 18 U.S.C. §1962.

193.    Under 18 U.S.C.A. §1962(c)-(d):

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any provisions of subsection (a), (b), or (c) of this section.

194.    Under 18 U.S.C.A. §1964 (a) (Civil Remedies):

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

195.    In addition to providing a mechanism to counter criminal activities, the RICO

statute also establishes and provides for a private enforcement scheme for violations of the RICO statute.

196.    18 U.S.C. §1964(c) states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

197.    The Defendants named herein violated 18 U.S.C. §1962 (c) and (d).

198.    18 U.S.C.A. §1961(3) defines a "person" as an "entity capable of holding a legal or beneficial interest in property."

199.    "Racketeering activity" is defined in 18 U.S.C.A. § 1961 and includes any act which is indictable under 18 U.S.C.A. §1341, relating to mail fraud which affects interstate commerce.

200.    18 U.S.C.A. §1964(c) reads in relevant part as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee…

201.    Defendants' conduct constitutes a violation of the provisions of the RICO statute and Plaintiffs are entitled to recovery of damages.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Against MC, Raine, Better Hands and Go Flex**
**(Declaratory Judgment - 28 U.S.C. §§2201 and 2202-Fraudulent Treatment Protocol)**

202.    Liberty Mutual incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 201 above.

203.    There is an actual case in controversy between Liberty Mutual and the Defendants regarding more than Eight Hundred Thousand Dollars ($800,000.00) submitted claims with a total amount of damages incurred, inclusive of expenses, in excess of Two Hundred Thousand Dollars ($200,000.00).

204.    The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the Fraudulent Services were not medically necessary and were provided, the extent they were provided at all, pursuant to a pre-determined protocol that serve to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds.

205.    The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to Liberty Mutual.

206.    The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the fraudulent, pre-determined treatment protocol was subject to the direction and control of persons not licensed to practice medicine, resulting in the performance and billing for unnecessary and inflated charges to Liberty Mutual.

207.    Accordingly, Liberty Mutual requests a judgment pursuant to 28 U.S.C. §§2201 and 2202, declaring that the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual.

### SECOND CAUSE OF ACTION
**Against MC, Raine, Better Hands and Go Flex**
**(Declaratory Judgment -28 U.S.C. §§2201 and 2202- Independent Contractors)**

208.    Liberty Mutual incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 207 above.

209.    There is an actual case in controversy between Liberty Mutual and the Defendants regarding more than Eight Hundred thousand Dollars ($800,000.00) in submitted claims with a total amount of damages incurred, inclusive of expenses, in excess of Two Hundred Thousand Dollars ($200,000.00).

210.    The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the Defendants do not have standing to submit or recover No-Fault benefits under New York State law due to their use of independent contractors who have performed the Fraudulent Services for which they seek No-Fault reimbursement.

211.    In view of the unlawful use of independent contractors in violation of 11 NYCRR §65-3.11(a), the PC Defendants do not have standing to submit or recover No-Fault benefits for services performed by independent contractors.

212.    Accordingly, Liberty Mutual requests a judgment pursuant to 28 U.S.C. §§2201 and 2202, declaring that the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual.

### THIRD CAUSE OF ACTION
**Against PC Defendants**
**(Declaratory Judgment - 28 U.S.C. §§2201 and 2202- Breach of a Condition Precedent)**

213.    Liberty Mutual incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 212 above.

214.    There is an actual case in controversy between Liberty Mutual and the Defendants regarding more than Eight Hundred thousand Dollars ($800,000.00) in submitted claims with a total amount of damages incurred, inclusive of expenses, in excess of Two Hundred Thousand Dollars ($200,000.00).

215.    By virtue of Defendants' failure to appear for an EUO, the Defendants breached a

material condition precedent to coverage established by the No-Fault Regulation and the subject policy of insurance.  The charts attached hereto as **Exhibits "E" (MC), "F" (Raines), "G" (Better Hands)** and **"H" (Go Flex)** each demonstrate the failure of the PC Defendants to appear for two duly scheduled examinations under oath, rendering each PC Defendant ineligible to receive No-Fault reimbursements for the claims in which an EUO was requested and for which the provider failed to appear.

216.    The breach of a condition precedent to coverage has rendered Defendants, MC and Better Hands, ineligible to receive No-Fault reimbursements from Liberty Mutual.

217.    Accordingly, Liberty Mutual requests a judgment pursuant to 28 U.S.C. §§2201 and 2202, declaring that Liberty Mutual is under no obligation to pay, honor or reimburse the Defendants for the claim(s) submitted for which an examination under oath was sought and for which the Defendants failed to appear.

### FOURTH CAUSE OF ACTION
**Against All Defendants**
**(Common Law Fraud)**

218.    Liberty Mutual incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 217 above.

219.    The Defendants knowingly made false and fraudulent statements of material fact to Liberty Mutual in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Services.

220.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that the billed services were medically necessary, when in fact the billed services were not medically necessary and were performed pursuant to a pre-determined protocol that was subject to the direction and control by unlicensed

persons which enriched the Defendants; (ii) in every claim, the representation that the billing appropriately reflected the level of services performed, when in fact the billing codes used for the Fraudulent Services and the manner in which the services were described misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to Liberty Mutual.

221.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through the PC Defendants which were not compensable under the No-Fault laws.

222.    Liberty Mutual have been injured in its business and property by reason of the above-described conduct in that it has paid at least Two Hundred Thousand Dollars ($200,000.00) pursuant to the fraudulent bills submitted by the Defendants through the PC Defendants.

223.    Accordingly, by virtue of the foregoing, Liberty Mutual are entitled to compensatory damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Against all Defendants**
**(Unjust Enrichment)**

224.    Liberty Mutual incorporate, as though fully set forth herein, each and every allegation in paragraphs 1 through 223 above.

225.    As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

226.     When Liberty Mutual paid the bills and charges submitted by or on behalf of the PC Defendants for No-Fault benefits, they reasonably believed that they were legally obligated to make such payments based on the Defendants' improper, unlawful and/or unjust acts.

227.     The Defendants have been enriched by payment from Liberty Mutual which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

228.     Defendants' retention of payments from Liberty Mutual violates fundamental principles of justice, equity and good conscience.

229.     The PC Defendants, additionally, in attempts to avoid detection and in furtherance of the scheme for fraudulent services, paid the support services in connection with the scheme with pre-executed checks to mask the illegitimacy of the transactions.

230.     The support services and layperson owners were financially enriched by payment from the PC Defendants, which included funds disbursed from payments made by Liberty Mutual to the PC defendants. These payments were made specifically to assist the PC defendants in continuing the scheme for fraudulent services without interruption for the period of time when the scheme was active.

231.     The support services, as part of the scheme, and aware that the scheme and its proceeds were improper, unlawful and unjust, knowingly accepted the proceeds of the scheme through their association to the PC Defendants.

232.     The defendants were further financially enriched by distribution of the payments made from Liberty Mutual to the support services defendants and layperson owners which were made knowingly with the intent to disburse funds received as part of the illicit arrange to bill for fraudulent services.

233.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than Two Hundred Thousand Dollars ($200,000.00).

## SIXTH CAUSE OF ACTION
### Against Cuadra, Geykhman, the support services and layperson owners
### (Violation of RICO, 18 U.S.C. §1962(c))
### (MC Enterprise)

234.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 233 above.

### ENTERPRISE

235.    MC is a legal entity and thus is an "enterprise," as that term is defined in 18 U.S.C. §1961(4).  This legal entity enterprise engages in activities which affect interstate commerce as the professional corporation bills patients who reside in different states, and the professional corporation, in the conducting of its business, purchases goods and services manufactured in different states which are transported to the P.C. by means of interstate commerce

### DEFENDANTS

236.    The Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support

Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov are "persons" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3). The Defendants are distinct of MC which is a separately incorporated entity. The Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services,

Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov is or were employed by and/or associated with the MC Enterprise.

## RACKETEERING VIOLATION

237.    The Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knowingly conducted and/or participated, directly or indirectly, in the conduct of MC's affairs through a pattern of racketeering activity consisting of repeated violations of the federal

mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit or cause to be submitted thousands of fraudulent bills over the course of more than five years, all in violation of 18 U.S.C. § 1962(c). See a representative sampling of the claims submitted by MC to Liberty Mutual through the Unites states Postal Service (USPS) which are annexed hereto as **Exhibit "A".**

238.    MC was not eligible to receive payments because: (i) the services billed for were not provided and/or were not provided as billed; (ii) the services billed for were not medically necessary and were performed solely to maximize billing; (iii) the billed-for-services were performed pursuant to a pre-determined, fraudulent treatment and billing protocol; (iv) the services were rendered by independent contractors; (v) the services were rendered to patients who were obtained as a result of illegal kickbacks; and (vi) MC failed to appear for Examination Under Oath as requested.

## PATTERN OF RACKETEEING ACTIVITY

239.    MC submits fraudulent charges to insurers. The racketeering activity of mail fraud is separate from the activities of MC which is to provide healthcare services to patients in a transitory matter. Plaintiffs allege that the course of conduct engaged in by the RICO defendants constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). Plaintiffs can show the relatedness prong because the predicate acts of mail fraud have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise," which was to submit fraudulent charges to insurers. All predicate acts have the same purpose of defrauding the Plaintiffs through mailings from MC to Plaintiffs which further the fraudulent scheme involving billing for services not provided, billing for medically unnecessary services; billing for

services rendered to patients obtained through the payment of kickbacks and for services rendered by independent contractors.

240.    Plaintiffs allege that the continuity of the pattern of racketeering activity is closed-ended inasmuch as the scheme, from its inception, extends for a period of at least two (2) years. Moreover, the scheme may be found to be "open-ended" continuity because the predicate scheme of mail fraud is the regular way in which Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov operated MC insofar as MC was never eligible to bill for or collect No-Fault benefits, and acts of mail fraud, therefore, are/were essential in order for MC to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail

fraud implies a threat of continued criminal activity, as does the ongoing submission of claims for reimbursements and continued attempt to collect on any claims.

241.    MC continues to submit and/or attempt collection of the fraudulent billing to the detriment of Liberty Mutual.

## CONDUCTING AFFAIRS OF THE ENTERPRISE

242.    The Defendants participated in the "operation or management" of MC's affairs in order to effect the fraudulent scheme. In this regard, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov were able to create and implement a pre-determined protocol for the rendition of medical services, without regard to the nature and extent of the injuries of the alleged

party. This pre-determined protocol included excessive and unnecessary patient examinations. The actions were taken by the Defendants solely to generate the largest possible amount of billing to be submitted to No-Fault insurers, including Liberty Mutual.

## INJURY TO BUSINESS AND PROPERTY

243.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at in excess of Twenty-Five Thousand Dollars ($25,000.00) pursuant to the fraudulent bills submitted by the Defendants.

244.    By reason of its injury, proximately and directly caused by the Defendants illegal predicate activity, Liberty Mutual is entitled to Treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### SEVENTH CAUSE OF ACTION
**Against Cuadra, Geykhman, the support services and layperson owners**
**(Violation of RICO, 18 U.S.C. §1962(d))**
**(MC Enterprise)**

245.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 244 above.

246.    Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina

Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

247.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least Twenty-Five Thousand Dollars ($25,000.00) pursuant to the fraudulent bills submitted by the Defendants through MC.

248.    By reason of its injury, directly and proximately caused by the fraudulent scheme, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against Pesides, Geykhman, the support services and layperson owners**
**(Violation of RICO, 18 U.S.C. §1962(c))**
**(Raine Enterprise)**

249.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 248 above.

## ENTERPRISE

250.    Raine is a legal entity and thus is an "enterprise," as that term is defined in 18 U.S.C. §1961(4).  This legal entity enterprise engages in activities which affect interstate commerce as the professional corporation bills patients who reside in different states, and the professional corporation, in the conducting of its business, purchases goods and services manufactured in different states which are transported to the P.C. by means of interstate commerce

## DEFENDANTS

251.    The Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak,

JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov are "persons" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3). The Defendants are distinct of Raine which is a separately incorporated entity. The Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp.,

Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov is or were employed by and/or associated with the Raine Enterprise.

## RACKETEERING VIOLATION

252.   The Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knowingly conducted and/or participated, directly or indirectly, in the conduct of Raine's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit or cause to be submitted thousands of fraudulent bills over the course of more than five years, all in violation of 18 U.S.C. § 1962(c). See a representative sampling of the claims submitted by Raine

to Liberty Mutual through the Unites states Postal Service (USPS) which are annexed hereto as **Exhibit "B".**

253.    Raine was not eligible to receive payments because: (i) the services billed for were not provided and/or were not provided as billed; (ii) the services billed for were not medically necessary and were performed solely to maximize billing; (iii) the billed-for-services were performed pursuant to a pre-determined, fraudulent treatment and billing protocol; (iv) the services were rendered by independent contractors; and (v) the services were rendered to patients who were obtained as a result of illegal kickbacks;

## PATTERN OF RACKETEEING ACTIVITY

254.    Raine submits fraudulent charges to insurers. The racketeering activity of mail fraud is separate from the activities of Raine which is to provide healthcare services to patients in a transitory matter. Plaintiffs allege that the course of conduct engaged in by the RICO defendants constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). Plaintiffs can show the relatedness prong because the predicate acts of mail fraud have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise," which was to submit fraudulent charges to insurers. All predicate acts have the same purpose of defrauding the Plaintiffs through mailings from Raine to Plaintiffs which furthered the fraudulent scheme involving billing for services not provided, billing for medically unnecessary services; billing for services rendered to patients obtained through the payment of kickbacks and for services rendered by independent contractors.

255.    Plaintiffs allege that the continuity of the pattern of racketeering activity is closed-ended inasmuch as the scheme, from its inception, extends for a period of at least two (2) years.

Moreover, the scheme may be found to be "open-ended" continuity because the predicate scheme of mail fraud is the regular way in which Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov operated Raine insofar as Raine was never eligible to bill for or collect No-Fault benefits, and acts of mail fraud, therefore, are/were essential in order for Raine to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the ongoing submission of claims for reimbursements and continued attempt to collect on any claims.

256.    Raine continues to submit and/or attempt collection of the fraudulent billing to the detriment of Liberty Mutual.

## CONDUCTING AFFAIRS OF THE ENTERPRISE

257.     The Defendants participated in the "operation or management" of Raine's affairs in order to effect the fraudulent scheme. In this regard, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov were able to create and implement a pre-determined protocol for the rendition of medical services, without regard to the nature and extent of the injuries of the alleged party. This pre-determined protocol included excessive and unnecessary patient examinations. The actions were taken by the Defendants solely to generate the largest possible amount of billing to be submitted to No-Fault insurers, including Liberty Mutual.

## INJURY TO BUSINESS AND PROPERTY

258.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at in excess of Forty Thousand Dollars ($40,000.00) pursuant to the fraudulent bills submitted by the Defendants.

259.    By reason of its injury, proximately and directly caused by the Defendants illegal predicate activity, Liberty Mutual is entitled to Treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Against Pesides, Geykhman, the support services and layperson owners
### (Violation of RICO, 18 U.S.C. §1962(d))
### (Raine Enterprise)

260.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 259 above.

261.    Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov,

Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

262.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least Forty Thousand Dollars ($40,000.00) pursuant to the fraudulent bills submitted by the Defendants through Raine.

263.    By reason of its injury, directly and proximately caused by the fraudulent scheme, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TENTH CAUSE OF ACTION
### Against Parcon, Geykhman, the support services and layperson owners
### (Violation of RICO, 18 U.S.C. §1962(c))
### (Better Hands Enterprise)

264.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company,

Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 263 above.

## ENTERPRISE

265.    Better Hands is a legal entity and thus is an "enterprise," as that term is defined in 18 U.S.C. §1961(4).  This legal entity enterprise engages in activities which affect interstate commerce as the professional corporation bills patients who reside in different states, and the professional corporation, in the conducting of its business, purchases goods and services manufactured in different states which are transported to the P.C. by means of interstate commerce

## DEFENDANTS

266.    The Defendants, Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation,

Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov are "persons" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3). The Defendants are distinct of Better Hands which is a separately incorporated entity. The Defendants Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov is or were employed by and/or associated with the Better Hands Enterprise.

## RACKETEERING VIOLATION

267.    The Defendants, Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp.,

Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knowingly conducted and/or participated, directly or indirectly, in the conduct of Raine's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit or cause to be submitted thousands of fraudulent bills over the course of more than two years, all in violation of 18 U.S.C. § 1962(c). See a representative sampling of the claims submitted by Better Hands to Liberty Mutual through the Unites states Postal Service (USPS) which are annexed hereto as **Exhibit "C".**

268.    Better Hands  was not eligible to receive payments because: (i) the services billed for were not provided and/or were not provided as billed; (ii) the services billed for were not medically necessary and were performed solely to maximize billing; (iii) the billed-for-services

were performed pursuant to a pre-determined, fraudulent treatment and billing protocol; (iv) the services were rendered by independent contractors; (v) the services were rendered to patients who were obtained as a result of illegal kickbacks; and (vi) Better Hands failed to appear for Examinations Under Oath as requested.

## PATTERN OF RACKETEEING ACTIVITY

269.    Better Hands submits fraudulent charges to insurers. The racketeering activity of mail fraud is separate from the activities of Better Hands which is to provide healthcare services to patients in a transitory matter. Plaintiffs allege that the course of conduct engaged in by the RICO defendants constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). Plaintiffs can show the relatedness prong because the predicate acts of mail fraud have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise," which was to submit fraudulent charges to insurers. All predicate acts have the same purpose of defrauding the Plaintiffs through mailings from Better Hands to Plaintiffs which furthered the fraudulent scheme involving billing for services not provided, billing for medically unnecessary services; billing for services rendered to patients obtained through the payment of kickbacks and for services rendered by independent contractors.

270.    Plaintiffs allege that the continuity of the pattern of racketeering activity is closed-ended inasmuch as the scheme, from its inception, extends for a period of at least two (2) years. Moreover, the scheme may be found to be "open-ended" continuity because the predicate scheme of mail fraud is the regular way in which Defendants Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp.,

Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov operated Better Hands insofar as Better Hands was never eligible to bill for or collect No-Fault benefits, and acts of mail fraud, therefore, are/were essential in order for Better Hands to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the ongoing submission of claims for reimbursements and continued attempt to collect on any claims.

271.    Better Hands continues to submit and/or attempt collection of the fraudulent billing to the detriment of Liberty Mutual.

## CONDUCTING AFFAIRS OF THE ENTERPRISE

272.    The Defendants participated in the "operation or management" of Better Hands' affairs in order to effect the fraudulent scheme. In this regard, Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice

Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov were able to create and implement a pre-determined protocol for the rendition of medical services, without regard to the nature and extent of the injuries of the alleged party. This pre-determined protocol included excessive and unnecessary patient examinations. The actions were taken by the Defendants solely to generate the largest possible amount of billing to be submitted to No-Fault insurers, including Liberty Mutual.

## INJURY TO BUSINESS AND PROPERTY

273.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at in excess of Twenty-Five Thousand Dollars ($25,000.00) pursuant to the fraudulent bills submitted by the Defendants.

274. By reason of its injury, proximately and directly caused by the Defendants illegal predicate activity, Liberty Mutual is entitled to Treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
**Against Parcon, Geykhman, the support services and layperson owners**
**(Violation of RICO, 18 U.S.C. §1962(d))**
**(Better Hands Enterprise)**

275. Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 274 above.

276. Defendants Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process

Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

277.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least Twenty-Five Thousand Dollars ($25,000.00) pursuant to the fraudulent bills submitted by the Defendants through Better Hands.

278.    By reason of its injury, directly and proximately caused by the fraudulent scheme, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### THIRTEENTH CAUSE OF ACTION
**Against Parcon, Geykhman, the support services and layperson owners**
**Violation of RICO, 18 U.S.C. §1962(c))**
**(Go Flex Enterprise)**

279.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 278 above.

## ENTERPRISE

280.    Go Flex is a legal entity and thus is an "enterprise," as that term is defined in 18 U.S.C. §1961(4).   This legal entity enterprise engages in activities which affect interstate commerce as the professional corporation bills patients who reside in different states, and the professional corporation, in the conducting of its business, purchases goods and services manufactured in different states which are transported to the P.C. by means of interstate commerce.

## DEFENDANTS

281.    The Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov are "persons" capable of holding a legal or beneficial interest in property within the

meaning of 18 U.S.C. § 1961(3). The Defendants are distinct of Go Flex which is a separately incorporated entity. The Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov is or were employed by and/or associated with the Go Flex Enterprise.

## RACKETEERING VIOLATION

282.   The Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support

Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knowingly conducted and/or participated, directly or indirectly, in the conduct of Go Flex's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit or cause to be submitted thousands of fraudulent bills over the course of more than five years, all in violation of 18 U.S.C. § 1962(c). See a representative sampling of the claims submitted by Go Flex to Liberty Mutual through the Unites states Postal Service (USPS) which are annexed hereto as **Exhibit "D".**

283.    Go Flex  was not eligible to receive payments because: (i) the services billed for were not provided and/or were not provided as billed; (ii) the services billed for were not medically necessary and were performed solely to maximize billing; (iii) the billed-for-services were performed pursuant to a pre-determined, fraudulent treatment and billing protocol; (iv) the services were rendered by independent contractors; and (v) the services were rendered to patients who were obtained as a result of illegal kickbacks.

## PATTERN OF RACKETEERING ACTIVITY

284.    Go Flex submits fraudulent charges to insurers. The racketeering activity of mail fraud is separate from the activities of Raine which is to provide healthcare services to patients in a transitory matter. Plaintiffs allege that the course of conduct engaged in by the RICO defendants constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5). Plaintiffs can show the relatedness prong because the predicate acts of mail fraud have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise," which was to submit fraudulent charges to insurers. All predicate acts have the same purpose of defrauding the Plaintiffs through mailings from Go Flex to Plaintiffs which furthered the fraudulent scheme involving billing for services not provided, billing for medically unnecessary services; billing for services rendered to patients obtained through the payment of kickbacks and for services rendered by independent contractors.

285.    Plaintiffs allege that the continuity of the pattern of racketeering activity is closed-ended inasmuch as the scheme, from its inception, extends for a period of at least two (2) years. Moreover, the scheme may be found to be "open-ended" continuity because the predicate scheme of mail fraud is the regular way in which Defendants,  Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur

Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov operated Go Flex insofar as Go Flex was never eligible to bill for or collect No-Fault benefits, and acts of mail fraud, therefore, are/were essential in order for Go Flex to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the ongoing submission of claims for reimbursements and continued attempt to collect on any claims.

286.    Go Flex continues to submit and/or attempt collection of the fraudulent billing to the detriment of Liberty Mutual.

## CONDUCTING AFFAIRS OF THE ENTERPRISE

287.    The Defendants participated in the "operation or management" of Go Flex's affairs in order to effect the fraudulent scheme. In this regard, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc.,

Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov were able to create and implement a pre-determined protocol for the rendition of medical services, without regard to the nature and extent of the injuries of the alleged party. This pre-determined protocol included excessive and unnecessary patient examinations. The actions were taken by the Defendants solely to generate the largest possible amount of billing to be submitted to No-Fault insurers, including Liberty Mutual.

## INJURY TO BUSINESS AND PROPERTY

288.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at in excess of Thirty-Seven Thousand Dollars ($37,000.00) pursuant to the fraudulent bills submitted by the Defendants.

289.    By reason of its injury, proximately and directly caused by the Defendants illegal predicate activity, Liberty Mutual is entitled to Treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
**Against Parcon, Geykhman, the support services and layperson owners**
**(Violation of RICO, 18 U.S.C. §1962(d))**
**(Go Flex Enterprise)**

290.    Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 289 above.

291.    Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to

defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

292.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least Twenty-Five Thousand Dollars ($25,000.00) pursuant to the fraudulent bills submitted by the Defendants through Go Flex.

293.    By reason of its injury, directly and proximately caused by the fraudulent scheme, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## JURY DEMAND

294.    Pursuant to Federal Rule of Civil Procedure 38(b), Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company, demands a trial by jury.

**WHEREFORE,** Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company and any and all of their subsidiaries, affiliates and/or parent companies demand that a Judgment be entered in their favor:

(a)     On the First Cause of Action against the Defendants, a declaration pursuant to 28 U.S.C. §§2201 and 2202, that the Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the Fraudulent Services purportedly performed were rendered pursuant to a predetermined fraudulent treatment protocol and the billing submitted misrepresented and exaggerated the level of services purportedly performed;

(b)     On the Second Cause of Action against the Defendants, a declaration pursuant to 28 U.S.C. §§2201 and 2202, that the Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the Fraudulent Services purportedly performed were rendered by independent contractors;

(c)     On the Third Cause of Action against the Defendants, a declaration pursuant to 28 U.S.C. §§2201 and 2202, that the Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because Defendants, MC and Better Hands, breached a material condition precedent to coverage under the applicable policies of insurance and No-Fault regulation by refusing and failing to appear for an EUO and that Liberty Mutual is under no obligation to pay, honor or reimburse the Defendants for any bill submitted and for which an EUO was requested;

(d)     On the Fourth Cause of Action against the Defendants, compensatory damages in favor Liberty Mutual an amount to be determined at trial but in excess of One Hundred Fifty Thousand Dollars ($150,000.00) together with, costs, interest and such other and further relief as this Court deems just and proper; and

(e)     On the Fifth Cause of Action against the Defendants, more than One Hundred Fifty Thousand Dollars ($150,000.00) for unjust enrichment plus costs and interest and such other relief as this Court deems just and proper.

(f)     On the Sixth Cause of action against the Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme

Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Twenty-Five Thousand Dollars ($25,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest; and

(g)     On the Seventh Cause of action against the Defendants, Cuadra, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Twenty-Five Thousand Dollars ($25,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d) plus interest; and

(h)     On the Eighth Cause of action against the Defendants, Pesides, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a

Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Forty Thousand Dollars ($40,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest; and

(i)     On the Ninth Cause of action against the Defendants, Pesides, Vladimir Geykhman, 3902 LLC, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM

Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Forty Thousand Dollars ($40,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d) plus interest; and

(j)      On the Tenth Cause of action against the Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Twenty-Five Thousand Dollars ($25,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest; and

(k)      On the Eleventh Cause of action against the Defendants, Ballener, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc.,

Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Twenty-Five Thousand Dollars ($25,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d) plus interest; and

(l)     On the Twelfth Cause of action against the Defendants, Parcon, Vladimir Geykhman, 3902 LLC, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than Thirty-Seven Thousand Dollars ($37,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §

1964(c) plus interest; and

(m)     On the Thirteenth Cause of action against the Defendants, Parcon, Vladimir Geykhman, 3902 LLC, Rafik Koptiev, Rusi Sanjana, 1001 NY Corp., Delta Billing Service Corp., First Choice Software Management Corp., Mavjuda Tasheva, Advertising & Web Inc., ABC Marketing Solutions Corp., Five Star Advertising Services Corp., MNDNT Corp., Matlyuba Khakimova, Michael Resnick f/k/a Michael Reznikov, Alina Margulis, All Legal Support Services, Inc., Comp & Network Support Services, Inc., Expert Transport Services, Inc., Quick Billing & Collection Services, Inc., Nataliya Anisimova, Alpha Billing Solution Corp., Hannah Burlak, Avon A.S. Corp, Artur Sattarov, Business Development Services, Inc., Data Storage & Filing Preparation Inc., Express Janitorial Services, Inc., Raivis Gravelsins, JJR Global, Ltd., JNBNJ Enterprises Corp., Daryna Burlak, JWNY Billing And Collections Corp., Jashur Rahmatov, Lioudmila Berseneva Inc., Lioudmila Berseneva, Mironcom Expert, Inc., NY Best Collections & Litigation Inc., Office Supply Services, Inc., Prompt Process Invest Services, Inc., Liudmyla Lypniakova, One Of Kind Transport, Inc., Leonid Pogoriler, Prof Collection & Litigation Services Inc., Professional Documents Preparation, Inc., Rami El Suwi, Romgo Tech Service, Inc., SHN Global, Inc., STGG Enterprises, Corp., Supreme Trans, Inc., Sojida Bkoeva, West East Advertising & Marketing, Inc., and Konstantin Burasov in favor of Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, LM General Insurance Company, Wausau Underwriters Insurance Company, Safeco Company of Indiana, American States Insurance Company and Montgomery Mutual Insurance Company in an amount more than than Thirty-Seven Thousand Dollars ($37,000.00), together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d) plus interest; and

**[The remainder of this page is intentionally left blank]**

(n)     For such other and further relief that this Court deems just, proper and equitable.

Dated:  Wantagh, New York
        December 8, 2021

                            Yours, etc.,
                            **CALLINAN & SMITH LLP**

                            By: _____
                                Michael A. Callinan (MC7052)
                                Vanessa H. Hlinka (VH0808)
                                Craig J. Bruno (CB3064)
                                Steven Daniel Levy (SL8519)
                            3361 Park Avenue, Suite 104
                            Wantagh, New York 11793
                            (516) 784-5148
                            (516) 667-1003 – *facsimile*
                            mcallinan@callinansmith.com
                            vhlinka@callinansmith.com
                            cbruno@callinansmith.com
                            slevy@callinansmith.com